BURSOR & FISHER
P.A.

1330 AVENUE OF THE AMERICAS
NEW YORK, NY 10019
www.bursor.com

PHILIP L. FRAIETTA
Tel: 646.837.7150
Fax: 212.989.9163
pfraietta@bursor.com

December 23, 2024

***Via ECF***

The Honorable P. Kevin Castel
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

*Re:* *Simon v. Scripps Networks, LLC*, No. 1:24-cv-08175-PKC (S.D.N.Y.)

Dear Judge Castel:

I represent Plaintiff Constance Simon ("Plaintiff") in the above-referenced action. I write in response to Defendant Scripps Networks, LLC's ("Defendant") December 17, 2024 letter requesting a pre-motion conference on its anticipated motion to dismiss (ECF No. 17) (the "Letter"). Pursuant to Rule 3(A)(iv) of Your Honor's Individual Practices, Plaintiff seeks leave to amend her complaint.[1] Due to the upcoming holidays and pre-planned family travel, Plaintiff respectfully requests until January 13, 2024, to file an amended complaint. As detailed below, Plaintiff will oppose Defendant's forthcoming motion to dismiss.

## I. Plaintiff Has Standing

Defendant argues "Plaintiff lacks standing to bring her claim" because Defendant "removed the Meta Pixel from all of HGTV.com's video pages in the spring of 2022[.]" Letter at 2. Although Plaintiff alleges she watched videos on HGTV.com "within the last two years," FAC ¶ 52, she has subscribed to HGTV's newsletter and regularly watched videos on HGTV.com since at least 2018. If permitted to do so, Plaintiff will include these allegations in an amended complaint. This will narrow the issues before the Court as Plaintiff has watched videos on HGTV.com while the Meta Pixel was still active. Plaintiff therefore has standing. *Carter v. Scripps Networks, LLC*, 670 F. Supp. 3d 90, 95-96 (S.D.N.Y. 2023) ("Therefore, at the pleading stage, defendants' alleged disclosure of plaintiffs' personal information and viewing activities describes traditionally recognized harm.") (Castel, J.).

Defendant claims in a footnote that leave to amend "would be futile given the Pixel was removed over two years ago." Letter at 2, fn.2. But Defendant overlooks that any applicable

[1] Plaintiff filed a First Amended Complaint on November 26, 2024 (ECF No. 9) solely for the purpose of substituting Discovery Communications, LLC for Scripps Networks, LLC as the named Defendant. No substantive allegations were altered.

statute of limitations period was tolled from March 11, 2022 to April 24, 2023 by *Carter v. Scripps Networks, LLC*, Case 1:22-cv-02031-PKC. Amendment would therefore not be futile.

### II. Plaintiff Is A "Subscriber" Under *Salazar* And Need Not Allege The Newsletter Contained The Pixel

Defendant next cites to this Court's prior holding that plaintiffs were not "subscribers" under the VPPA,[2] claiming that "[b]y failing to plausibly allege the Newsletter contained the Pixel, Plaintiff fails to plead facts demonstrating any nexus between her purported subscription and the alleged violation of the VPPA, as was required." Letter at 2. This is wrong and misapprehends the *Salazar* decision.

In *Salazar*, the plaintiff's VPPA claim "rest[ed] on three primary allegations: (1) he has a Facebook account; (2) he signed up for the NBA's online newsletter; and (3) he watched NBA.com videos while logged into his Facebook account." *Salazar*, 118 F.4th at 538. Plaintiff alleges the same here. FAC ¶¶ 51-54. Salazar also alleged, as does Plaintiff here, "that he provided the NBA with his personal information when he signed up for the newsletter. In return for receiving periodic NBA-related updates, Salazar exchanged, at a minimum, (1) his email address, (2) his IP address, and (3) cookies associated with his device. He further alleges that through his IP address, the NBA can identify "the city and zip code he resides in as well as his physical location." *Id.* at 552; *see also* FAC ¶¶ 14-50.

The Second Circuit explained why those allegations sufficed to show the plaintiff was a "subscriber" under the VPPA:

> That information is not insignificant. By receiving it, the NBA learned how to directly reach out to Salazar. It discovered where his device was. It gained access to additional information stored in any cookies on his device. These tools increased the NBA's potential to urge Salazar to visit NBA.com and watch videos on it, making the NBA's relationship with him distinct from its relationship with casual NBA.com video-watchers who had not signed up for the newsletter. Accepting these allegations as true and drawing all reasonable inferences in Salazar's favor, as we must at the pleadings stage, Salazar plausibly alleged that he gave the NBA valuable personal information in exchange for access to the online newsletter. This is sufficient at the pleadings stage to satisfy the requirement that Salazar allege that he became a "subscriber of" the NBA's online newsletter.

*Salazar*, 118 F.4th at 552-53 (emphasis added, internal citations omitted). Therefore, Plaintiff has indeed alleged the "factual nexus or relationship" Defendant contends is required. *See also Lebakken v. WebMD, LLC*, 640 F. Supp. 3d 1335, 1340 (N.D. Ga. 2022) ("Lebakken alleges

[2] *Carter v. Scripps Networks, LLC*, 670 F. Supp. 3d 90, 99 (S.D.N.Y. 2023) (Castel, J.).

more than just the free downloading of a mobile application onto her smartphone; she alleges that she exchanged her email address to receive the WebMD e-newsletter and that she also created her own WebMD account. … the Court finds that Lebakken has adequately pleaded that she was a subscriber under the VPPA.”).

### III. Plaintiff Sufficiently Alleges Defendant Disclosed Plaintiffs' PII And Did So Knowingly

Defendant's remaining arguments are either belied by the FAC or require the Court to draw inferences *against* Plaintiff, which is impermissible. First, Defendant argues Plaintiff does not allege her PII was disclosed because (1) Plaintiff does not allege “that she was actually logged into Facebook and had not cleared her cookies while she viewed videos on HGTV.com” and (2) Plaintiff does not allege “that any information was transmitted that identified her via the c_user cookie” because the example screenshot used in the Complaint “does not lead to Plaintiff's profile.” Letter at 3. To the contrary, however, Plaintiff alleges, “When Plaintiff first subscribed, she entered her email address. Defendant then disclosed this identifier to Facebook, along with her Facebook ID and other identifying information, like identifiers for her browser. When Plaintiff watched videos on hgtv.com, Defendant disclosed event data to Facebook, knowing Facebook would combine that data with the identifiers. By doing so, HGTV disclosed Plaintiff's PII to a third-party.” FAC ¶¶ 53-54. “The Court must credit these pleadings at this pre-discovery stage.” *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 162 (S.D.N.Y. 2023) (Engelmayer, J.) (finding similar allegations sufficient to state a claim under VPPA); *see also Lamb v. Forbes Media LLC*, 2023 WL 6318033, at *10 (S.D.N.Y. Sept. 28, 2023) (“Courts have uniformly held Facebook IDs to constitute PII under the VPPA, particularly where—as here—the plaintiff alleges that her Facebook ID was disclosed alongside the viewed video's URL and name.”).

Next, Defendant argues Plaintiff's allegations fail because “it is Meta who places the c_user cookie on an individual's browser and receives information from it” and because Plaintiff has not pled “how encrypted Facebook IDs and browser identifiers could be used by an ordinary person without access to Meta's analytics tools to identify any specific user's watch history.” Letter at 3-4. But these arguments—along with Defendant's reliance on *Bernardino v. Barnes & Noble Booksellers, Inc.*, 2017 WL 3727230, at *8 (S.D.N.Y. Aug. 11, 2017)—were square rejected earlier this year by Judge Swain in *Aldana v. GameStop, Inc.*, 2024 WL 708589, at *8 (S.D.N.Y. Feb. 21, 2024), *motion to certify appeal denied*, 2024 WL 3104345 (S.D.N.Y. June 24, 2024). As Judge Swain explained, “This argument seeks to obscure the significance of Plaintiffs' allegations that Facebook is the third-party that received customer information from gamestop.com, <u>and</u> Facebook is able to decipher the cookies generated by the Facebook Tracking Pixel. Courts across the country—including in this district—have indicated that providing a third party with PII that is legible to that specific third party is sufficient to state a claim under the VPPA.”) (emphasis in original); *see also id.*, at *8 fn. 7 (“To support this argument, GameStop points to one decision in this District that denied a plaintiff's preliminary injunction motion and noted that Facebook's “fr” cookie was not clearly PII under the VPPA. <u>See</u> <u>Bernardino v. Barnes & Noble Booksellers, Inc.</u>, 2017 WL 3727230, at *9 (S.D.N.Y. Aug. 11, 2017) … However, that decision is of limited relevance here because it made clear ‘[the]

task on the present motion is not to decide the issue of whether the information conveyed is PII.'").

Finally, Defendant argues "Plaintiff must specifically allege that Scripps knew that the information it was conveying was PII," and Plaintiff "has not met her burden to adequately allege that Scripps knew that the data being collected and transmitted by the Meta Pixel was HGTV.com users' PII." Letter at 4. That is incorrect. *See* FAC ¶ 45 ("By compelling a visitor's browser to disclose the Advanced Matching parameters alongside event data for videos, HGTV knowingly discloses information sufficiently permitting an ordinary person to identify a specific individual's video viewing behavior."). Here too, this argument has been routinely rejected by courts in this District and throughout the country. *See Czarnionka v. Epoch Times Ass'n, Inc.*, 2022 WL 17069810, at *4 (S.D.N.Y. Nov. 17, 2022), *motion to certify appeal denied*, 2022 WL 17718689 (S.D.N.Y. Dec. 15, 2022) ("Plaintiff has plausibly alleged that the FID itself constituted PII. Knowledge of what Facebook might do with the disclosed information to yield PII is therefore unnecessary. Accordingly, I find that Plaintiff has plausible alleged 'knowing' disclosure."); *accord Aldana*, 2024 WL 708589, at *9; *see also Lamb*, 2023 WL 6318033, at *11 ("Here, the SAC alleges that Forbes discloses a subscriber's email address, first name, last name, SAC ¶ 40, and that "Forbes knows that Facebook will match the Advanced Matching parameters with a subscriber's subsequent activity, thereby helping Forbes '[i]ncrease the number of attributed conversions,' '[i]ncrease [its] Custom Audience size,' and '[d]ecrease the cost per conversion." SAC ¶ 41. Additionally, the SAC alleges that Forbes integrated or installed the Facebook Tracking Pixel into its website, *id.* ¶¶ 12, 18, and that it chose to activate the optional 'Advanced Matching' tool, *id.* ¶¶ 35–36. This is sufficient to allege Forbes acted 'knowingly.'"); *Harris v. Pub. Broad. Serv.*, 662 F. Supp. 3d 1327, 1337 (N.D. Ga. 2023) ("Plaintiff alleges Defendant installed the pixel for the specific purpose of transmitting personal viewing information whenever possible and in an automated manner. No more precise knowledge is required under the statute."); *Belozerov v. Gannett Co.*, 646 F. Supp. 3d 310, 2022 WL 17832185, at *4-5 (D. Mass. Dec. 20, 2022) (same).

Very truly yours,

Philip L. Fraietta

CC: All counsel of record (via ECF)