BURSOR & FISHER P.A.

1330 AVENUE OF THE AMERICAS
NEW YORK, NY 10019
www.bursor.com

PHILIP L. FRAIETTA
Tel: 646.837.7150
Fax: 212.989.9163
pfraietta@bursor.com

February 14, 2025

***Via ECF***

The Honorable P. Kevin Castel
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

*Re:* *Simon v. Scripps Networks, LLC*, No. 1:24-cv-08175-PKC (S.D.N.Y.)

Dear Judge Castel:

I represent Plaintiff Constance Simon ("Plaintiff") in the above-referenced action. I write in response to Defendant Scripps Networks, LLC's ("Defendant") February 10, 2025 letter requesting a pre-motion conference on its anticipated motion to dismiss (ECF No. 23) (the "Letter"). As detailed below, Plaintiff will oppose Defendant's forthcoming motion to dismiss.

**I. Plaintiff Has Article III Standing**

Defendant first argues Plaintiff lacks Article III standing because, according to Defendant, "the last record Scripps has of her visiting HGTV.com is from August 2021" and thus Plaintiff "cannot possibly have standing to bring a claim for alleged disclosures occurring in 2022[.]" Letter at 2. But the sufficiency of Defendant's internal records is not suitable for determination on a Rule 12 motion. This is especially true where, as here, Defendant has already taken inconsistent positions on its "internal records," casting doubt as to the reliability and search methodology of the same. Indeed, on November 18, 2024, counsel for Defendant stated "our client could not find any record of Ms. Simon as having signed up to receive the HGTV newsletter." Defendant reiterated the same on December 3, 2024. Now, for the first time, Defendant claims the opposite, admitting Plaintiff was, in fact, a newsletter subscriber and confirming that Plaintiff visited the website. It would therefore be inappropriate to blindly accept Defendant's say-so at this juncture. *See Sitt v. Nature's Bounty, Inc.*, 2016 WL 5372794, at *10 (E.D.N.Y. Sept. 26, 2016) ("Nevertheless, courts agree that issues of fact, credibility, and the weight of the evidence are not properly considered on a motion to dismiss.") (internal citation omitted).

At minimum, Plaintiff should be afforded jurisdictional discovery to confirm the accuracy of Defendant's assertions, such as the search process undertaken by Defendant and the reliability of Defendant's recordkeeping.

## II. Plaintiff's Claims Are Timely

Defendant next argues that Plaintiff's claims are untimely. Letter at 2-3. That is wrong. The VPPA states "[n]o action may be brought under this subsection unless such action is begun within 2 years from the date of the act complained of or the date of discovery." 18 U.S.C. § 2710(c)(3) (emphasis added). Although Defendant contends Plaintiff cannot rely on the delayed discovery rule because her complaint did not allege such, that is not accurate. Letter at 2. The crux of this lawsuit is that Defendant—using complex computer code—surreptitiously disclosed video-viewing data to a third party without Plaintiff's knowledge or consent. *See, e.g.*, SAC ¶¶ 16-22, 37, 41, 49; *see also id.* ¶ 75 ("Plaintiff and Class members did not provide Defendant with any form of consent—either written or otherwise—to disclose their PII to third parties."). Therefore, Plaintiff does, in fact, plead facts suggesting the delayed discovery rule would be appropriate. For the Court to hold otherwise would violate black letter law that "the Court must 'construe it liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor.'" *Singh v. Deloitte LLP*, 123 F.4th 88, 93 (2d Cir. 2024) (citing *Sacerdote v. New York Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021)). Nonetheless, if the Court so requires, Plaintiff can plead in an amended complaint the date she discovered Defendant's alleged violations.[1]

Lastly, Defendant argues Plaintiff's claims are untimely because its Visitor Agreement—which is tucked at the very bottom of its website in tiny font—"unambiguously states that claims arising from the use of HGTV.com must be brought within one year of the relevant events[.]" Letter at 3. But that is unenforceable browsewrap. Nor is there any indication this "contract" was ever presented to Plaintiff, let alone that she agreed to same. Indeed, "[u]nless the website operator can show that a consumer has actual knowledge of the agreement, an enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; *and* (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022) (emphasis added).[2] Neither exists here. *See Berkson v. Gogo LLC*, 9. F. Supp. 3d 359, 403 (E.D.N.Y 2015) ("For an internet browsewrap contract to be binding, consumers must have reasonable notice of a company's 'terms of use' and exhibit 'unambiguous assent' to those terms."); *Hines v. Overstock.com, Inc.*, 668 F. Supp. 2d 362, 368 (E.D.N.Y 2009), *aff'd*, 380 F. App'x 22 (2d Cir. 2010) (declining to enforce browsewrap agreement where user "could not even see the link to [the terms and conditions] without scrolling down to the bottom of the screen—an action that was not required to effectuate her purchase").

---

[1] Although Plaintiff would be filing a Third Amended Complaint, Plaintiff notes the First Amended Complaint was filed solely for the purpose of substituting Discovery Communications, LLC for Scripps Networks, LLC as the named Defendant. No substantive allegations were altered.

[2] "New York and California apply 'substantially similar rules for determining whether the parties have mutually assented to a contract term.'" *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (quoting *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012)).

**III. Plaintiff Need Not Allege The Newsletter Contained The Pixel**

Defendant again argues that Plaintiff fails to plead "the required nexus" between her purported subscription and the alleged violation of the VPPA. Letter at 3. Plaintiff's December 23, 2024 Letter explained why this argument is wrong in light of the Second Circuit's recent ruling in *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533 (2d Cir. 2024). *See, e.g.*, ECF No. 18, at 2-3. Although Defendant believes *Salazar* "did not address this argument in its decision," Defendant ignores that Plaintiff here makes virtually identical allegations as the plaintiff in *Salazar*, which the Second Circuit held was sufficient to allege the plaintiff was a subscriber under the VPPA. *Compare Salazar*, 118 F.4th at 538 (plaintiff's VPPA claim "rest[ed] on three primary allegations: (1) he has a Facebook account; (2) he signed up for the NBA's online newsletter; and (3) he watched NBA.com videos while logged into his Facebook account.") *with* SAC ¶¶ 51-54. Plaintiff's allegations are therefore sufficient under binding Second Circuit precedent. Nothing further is required.

**IV. Plaintiff Sufficiently Alleges Defendant Disclosed Plaintiffs' PII And Did So Knowingly**

Defendant's remaining arguments are either belied by the SAC or require the Court to draw inferences *against* Plaintiff, which is impermissible. First, Defendant argues Plaintiff does not allege her PII was disclosed because (1) Plaintiff does not allege "that she was actually logged into Facebook and had not cleared her cookies while she viewed videos on HGTV.com" and (2) Plaintiff does not allege "that any information was transmitted that identified her via the c_user cookie" because the example screenshot used in the Complaint "does not lead to Plaintiff's profile." Letter at 4. To the contrary, however, Plaintiff alleges, "When Plaintiff first subscribed, she entered her email address. Defendant then disclosed this identifier to Facebook, along with her Facebook ID and other identifying information, like identifiers for her browser. When Plaintiff watched videos on hgtv.com, Defendant disclosed event data to Facebook, knowing Facebook would combine that data with the identifiers. By doing so, HGTV disclosed Plaintiff's PII to a third-party." SAC ¶¶ 53-54. "The Court must credit these pleadings at this pre-discovery stage." *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 162 (S.D.N.Y. 2023) (finding similar allegations sufficient to state a claim under VPPA); *see also Lamb v. Forbes Media LLC*, 2023 WL 6318033, at *10 (S.D.N.Y. Sept. 28, 2023) ("Courts have uniformly held Facebook IDs to constitute PII under the VPPA, particularly where—as here—the plaintiff alleges that her Facebook ID was disclosed alongside the viewed video's URL and name.").

Next, Defendant argues Plaintiff's allegations fail because "it is Meta who places the c_user cookie on an individual's browser and receives information from it" and that encrypted Facebook IDs and browser identifiers "do not constitute PII." Letter at 4. But these arguments—along with Defendant's reliance on *Bernardino v. Barnes & Noble Booksellers, Inc.*, 2017 WL 3727230, at *8 (S.D.N.Y. Aug. 11, 2017)—were squarely rejected earlier this year by Judge Swain in *Aldana v. GameStop, Inc.*, 2024 WL 708589, at *8 (S.D.N.Y. Feb. 21, 2024), *motion to certify appeal denied*, 2024 WL 3104345 (S.D.N.Y. June 24, 2024). As Judge Swain explained, "This argument seeks to obscure the significance of Plaintiffs' allegations that

Facebook is the third-party that received customer information from gamestop.com, and Facebook is able to decipher the cookies generated by the Facebook Tracking Pixel. Courts across the country—including in this district—have indicated that providing a third party with PII that is legible to that specific third party is sufficient to state a claim under the VPPA.") (emphasis in original); *see also id.*, at *8 fn. 7 ("To support this argument, GameStop points to one decision in this District that denied a plaintiff's preliminary injunction motion and noted that Facebook's "fr" cookie was not clearly PII under the VPPA. See Bernardino v. Barnes & Noble Booksellers, Inc., 2017 WL 3727230, at *9 (S.D.N.Y. Aug. 11, 2017) … However, that decision is of limited relevance here because it made clear '[the] task on the present motion is not to decide the issue of whether the information conveyed is PII.'").

Finally, Defendant argues "Plaintiff still has not sufficiently alleged that Scripps knowingly disclosed any information that 'identifies a person as having requested or obtained specific video materials.'" Letter at 5. *See* SAC ¶ 45 ("By compelling a visitor's browser to disclose the Advanced Matching parameters alongside event data for videos, HGTV knowingly discloses information sufficiently permitting an ordinary person to identify a specific individual's video viewing behavior."). Here too, this argument has been routinely rejected by courts in this District and throughout the country. *See Czarnionka v. Epoch Times Ass'n, Inc.*, 2022 WL 17069810, at *4 (S.D.N.Y. Nov. 17, 2022), *motion to certify appeal denied*, 2022 WL 17718689 (S.D.N.Y. Dec. 15, 2022) ("Plaintiff has plausibly alleged that the FID itself constituted PII. Knowledge of what Facebook might do with the disclosed information to yield PII is therefore unnecessary. Accordingly, I find that Plaintiff has plausible alleged 'knowing' disclosure."); *accord Aldana*, 2024 WL 708589, at *9; *see also Lamb*, 2023 WL 6318033, at *11 ("Here, the SAC alleges that Forbes discloses a subscriber's email address, first name, last name, SAC ¶ 40, and that "Forbes knows that Facebook will match the Advanced Matching parameters with a subscriber's subsequent activity, thereby helping Forbes '[i]ncrease the number of attributed conversions,' '[i]ncrease [its] Custom Audience size,' and '[d]ecrease the cost per conversion." SAC ¶ 41. Additionally, the SAC alleges that Forbes integrated or installed the Facebook Tracking Pixel into its website, *id.* ¶¶ 12, 18, and that it chose to activate the optional 'Advanced Matching' tool, *id.* ¶¶ 35–36. This is sufficient to allege Forbes acted 'knowingly.'"); *Harris v. Pub. Broad. Serv.*, 662 F. Supp. 3d 1327, 1337 (N.D. Ga. 2023) ("Plaintiff alleges Defendant installed the pixel for the specific purpose of transmitting personal viewing information whenever possible and in an automated manner. No more precise knowledge is required under the statute."); *Belozerov v. Gannett Co.*, 646 F. Supp. 3d 310, 2022 WL 17832185, at *4-5 (D. Mass. Dec. 20, 2022) (same).

Very truly yours,

Philip L. Fraietta

CC: All counsel of record (via ECF)