**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CONSTANCE SIMON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SCRIPPS NETWORKS, LLC,<br><br>Defendant. | 1:24-cv-08175 |

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT</u>**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

*Attorneys for Defendant Scripps Networks, LLC*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..... 1
BACKGROUND ..... 2
LEGAL STANDARD FOR MOTION TO DISMISS ..... 5
ARGUMENT ..... 6
I. PLAINTIFF LACKS ARTICLE III STANDING ..... 6
II. PLAINTIFF'S REMAINING CLAIMS ARE TIME BARRED ..... 8
III. PLAINTIFF FAILS TO STATE A CLAIM TO RELIEF UNDER THE VPPA ..... 11
A. Plaintiff Has Not Alleged Necessary Conditions for Disclosure ..... 11
B. Plaintiff Has Not Plausibly Alleged that Scripps Knowingly Disclosed PII ..... 12
1. No Alleged Disclosure of Plaintiff's Identity ..... 12
2. Insufficient Allegations as to Scripps' Knowledge ..... 15
C. Plaintiff Does Not Allege the Newsletter Contained the Pixel ..... 17
CONCLUSION ..... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aldana v. GameStop, Inc.*,
No. 22-CV-7063, 2024 WL 708589 (S.D.N.Y. Feb. 21, 2024)....16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....6

*Austin-Spearman v. AMC Network Ent. LLC*,
98 F. Supp. 3d 662 (S.D.N.Y. 2015)....6, 16

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
995 F. Supp. 2d 291 (S.D.N.Y. 2014), *aff'd sub nom. SRM Glob. Master Fund L.P. v. Bear Stearns Cos.*, 829 F.3d 173 (2d Cir. 2016)....8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....6

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
No. 17-CV-04570, 2017 WL 3727230 (S.D.N.Y. Aug. 11, 2017)....13, 16

*Carter v. Scripps Networks*, *LLC*,
670 F. Supp. 3d 90 (S.D.N.Y. Apr. 24, 2023)....10

*Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.á.r.l.*,
790 F.3d 411 (2d Cir. 2015)....5

*Czarnionka v. Epoch Times Ass'n*,
No. 22 Civ. 6348, 2022 WL 17069810 (S.D.N.Y. Nov. 17, 2022)....16

*Dakus v. Koninklijke Luchtvaart Maatschappij, N.V.*,
No. 22-cv-7962, 2023 WL 5935694 (S.D.N.Y. Sept. 12, 2023)....5, 6, 7, 11

*Eichenberger v. ESPN*, *Inc.*,
876 F.3d 979 (9th Cir. 2017)....16

*Foman v. Davis*,
371 U.S. 178 (1962)....11

*Ghanaat v. Numerade Labs*,
689 F. Supp. 3d 714 (N.D. Cal. 2023)....12

*In re Hulu Priv. Litig.*,
86 F. Supp. 3d 1090 (N.D. Cal. 2015)....12

*In re Hulu Priv. Litig.*,
No. C 11-03764, 2014 WL 2758598 (N.D. Cal. June 17, 2014) ............................................15

*Javier v. Assurance IQ, LLC*,
No. 20-cv-02860, 2023 WL 3933070 (N.D. Cal. June 9, 2023)..............................................9

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Lit.*,
341 F.R.D. 474 (S.D.N.Y. 2022) ..........................................................................14

*Lee v. Springer Nature Am., Inc.*,
No. 24-cv-4493, 2025 WL 692152 (S.D.N.Y. Mar. 4, 2025)..................................................13

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)..........................................................................................8

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000)..................................................................................8

*Martinez v. D2C, LLC*,
No. 23-21394, 2024 WL 4367406 (S.D. Fla. Oct. 1, 2024) ...................................................11

*Newmont Mining Corp. v. AngloGold Ashanti Ltd.*,
344 F. Supp. 3d 724 (S.D.N.Y. 2018)..........................................................................10

*In re Nickelodeon*,
827 F.3d 262 (3d Cir. 2016)..................................................................................13

*Orozco v. Fresh Direct, LLC*,
No. 15-CV-8226, 2016 WL 5416510 (S.D.N.Y. Sept. 27, 2016)...........................................10

*In re PetroChina Co. Sec. Litig.*,
120 F. Supp. 3d 340 (S.D.N.Y. 2015), *aff'd sub nom. Klein v. PetroChina Co.,*
644 F. App'x 13 (2d Cir. 2016) ..........................................................................4, 15

*Ramiro Aviles v. S & P Glob., Inc.*,
380 F. Supp. 3d 221 (S.D.N.Y. 2019)..........................................................................9

*Robinson v. Disney Online*,
152 F. Supp. 3d 176 (S.D.N.Y. 2015).....................................................................13, 14

*Ruffolo v. Oppenheimer & Co.*,
987 F.2d 129 (2d Cir. 1993)..................................................................................11

*Salazar v. Nat'l Basketball Ass'n*,
118 F.4th 533 (2d Cir. 2024) (*petition for cert. filed*, March 14, 2025) .................................17

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) .......................................................................15

*Smith v. Trinity Broad. of Tex., Inc.*,
No. 8:24-cv-01046, 2024 WL 4394557 (C.D. Cal. Sept. 27, 2024) ........................................12

*Solomon v. Flipps Media, Inc.*,
No. 22-cv-5508, 2023 WL 6390055 (E.D.N.Y. Sept. 30, 2023), *appeal filed*,
No. 23-7597 (2d Cir. Nov. 1, 2023)....................................................................................12, 13

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)....................................................................................................................6

*Tandon v. Captain's Cove Marina of Bridgeport, Inc.*,
752 F.3d 239 (2d Cir. 2014)..............................................................................................6, 7, 8

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....................................................................................................................6

*Wilson v. Triller, Inc.*,
598 F. Supp. 3d 82 (S.D.N.Y. 2022)............................................................................6, 10, 13, 15

**Statutes**

Video Privacy Protection Act, 18 U.S.C. § 2710 *et seq.* ..................................................... passim

**Other Authorities**

Data Protection Comm'r, *Facebook Ireland Litd: Report of Re-Audit* (Sept. 21,
2012), http://www.europe-v-facebook.org/ODPC_Review.pdf .............................................14

Facebook, *Cookies Policy*, https://www.facebook.com/policy/cookies/ .......................................14

Federal Rule of Civil Procedure 12(b).....................................................................................1, 5, 6

Meta for Developers, *Advanced Matching*,
https://developers.facebook.com/docs/meta-pixel/advanced/advanced-
matching (last visited Mar. 20, 2025) .........................................................................................4

Meta for Developers, *Conversion API*,
https://developers.facebook.com/docs/marketing-api/conversions-
api/parameters/fbp-and-fbc/ ....................................................................................................15

Warner Bros. Discovery, *Discovery Visitor Agreement* (updated January 2023),
https://www.wbd.com/discovery-visitor-agreement/.............................................................10

Defendant Scripps Networks, LLC ("Scripps") respectfully submits this memorandum of law in support of its motion to dismiss Plaintiff Constance Simon's Second Amended Complaint (the "SAC") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

This case presents a belated attempt by Plaintiff to resurrect claims that are baseless and time-barred. Plaintiff purports to state a claim for violation of the Video Privacy Protection Act, 18 U.S.C. § 2710 *et seq.* (the "VPPA"), based on her alleged subscription to the HGTV.com newsletter (the "Newsletter"). However, Plaintiff unsubscribed from the Newsletter in January 2022. Indeed, Scripps has no record of Plaintiff visiting the HGTV.com website to view videos since August 2021. This Court should not permit Plaintiff to bring these meritless claims.

Plaintiff's VPPA claim fails for three fundamental reasons: (1) there was no disclosure of Plaintiff's video watching information within the last three years (since 2022) as alleged in the SAC, and Plaintiff therefore has no Article III standing to bring her claims against Scripps for any such disclosures; (2) her remaining claims pre-dating 2022 are time-barred by the applicable statute of limitations; and (3) Plaintiff fails to state a claim upon which she could seek relief from Scripps by failing to plausibly allege key requisite elements of the VPPA.

*First*, Plaintiff lacks Article III standing to bring her claims. She alleges in her SAC that she signed up for the Newsletter and watched HGTV.com videos routinely beginning in 2018 and ending sometime in 2021 or 2022 (SAC ¶ 52). Plaintiff, however, unsubscribed from the Newsletter in January 2022. In addition, Scripps' last record of Plaintiff visiting the HGTV.com website was in August 2021. Further, Scripps removed the Pixel from all of the HGTV.com video pages in the March of 2022, nearly three years before Plaintiff filed the SAC. Plaintiff therefore cannot establish that she suffered an injury-in-fact sufficient to confer Article III standing for any alleged disclosures in 2022.

*Second*, Plaintiff's remaining claims from her visits in 2018 through 2021 are time-barred by the VPPA's two-year statute of limitations. 18 U.S.C. § 2710(c)(3). Given that Scripps's last record of Plaintiff viewing any video content on the HGTV.com website was in August 2021, any purported VPPA claim accrued over two years ago and Plaintiff is unable to avail herself of any tolling doctrine such as the discovery rule.

*Third,* Plaintiff's SAC is rife with issues that are fatal to her ability to state a claim for relief. She fails to allege facts sufficient to show her Facebook ID was disclosed, including because she does not allege she was logged into Facebook while viewing videos. She fails to plead facts sufficient to show that Scripps disclosed her PII to Facebook through the Meta Pixel, or that such disclosures were done knowingly. And she has not pled any facts that would suggest the Newsletter itself contained the Pixel.

For all of these reasons, the Court should dismiss the SAC in its entirety.

## BACKGROUND

***The Parties.*** Plaintiff alleges that Scripps "develops, owns, and operates hgtv.com," a website that features "home and lifestyle content." SAC ¶ 2. Plaintiff states she entered her email address on HGTV.com to receive a free Newsletter via email that is separate and distinct from the video content that can be accessed directly on HGTV.com. *Id.* at ¶¶ 53, 70. Visitors can, but are not required to, receive the Newsletter by entering their email addresses into sign-up boxes that appear in various locations on HGTV.com. *See* SAC ¶ 38. Plaintiff alleges she subscribed to the Newsletter since at least 2018. *Id.* ¶ 52. Based on a review of Scripps' internal records, Plaintiff unsubscribed from the Newsletter in January 2022, and Scripps has no record of Plaintiff visiting the HGTV.com website since August 2021. *See* Katharina Winkler Decl. ("Winkler Decl.") at ¶ 6-7.

***The HGTV.com Privacy Policy***. Plaintiff alleges she entered her email when subscribing

to the Newsletter. SAC ¶ 53. A hyperlink to the Privacy Policy appeared directly above the sign-up button. *See* Winkler Decl. at ¶ 4. This hyperlink would have directed Plaintiff to the Privacy Policy in place at the time. *See Id.* Throughout the entire time Plaintiff alleges she interacted with the HGTV.com website, the Privacy Policy informed website visitors that information regarding how they use the website may be collected. *Id.* at ¶ 5. Each applicable Privacy Policy also notified users that the website utilized cookies and other trackers, and further provided resources regarding how to turn off cookie functionality. *Id.*

***The Alleged Disclosures by Scripps.*** Plaintiff also alleges that HGTV.com hosts a marketing tool called the Facebook Tracking Pixel[1] to "better track analytics and target its advertisements[.]" SAC ¶ 36. Plaintiff alleges that the Pixel transmits "events." *See id.* ¶ 16. Plaintiff also alleges that HGTV.com visitors' browsers transmit cookies to Facebook. *Id.* ¶¶ 24-33. While Plaintiff calls attention to nine different Facebook cookies embedded on HGTV.com, *id.* at Figures 10, 11, 12, Plaintiff herself asserts that **only three** of these cookies "sufficiently permit[] an ordinary person to identify a specific individual's video viewing behavior": the c_user, fr, and _fbp cookies. *Id.* ¶¶ 46-48. And Plaintiff cannot plead a VPPA violation even with these three cookies.

Regarding the c_user cookie, the SAC alleges that it contains a "visitor's unencrypted Facebook ID[,]" which Plaintiff alleges constitutes PII. *Id.* ¶ 24. Even if true, by Plaintiff's own admission, this cookie is **only** transmitted when a visitor watches videos on HGTV.com "while logged into Facebook[.]" *Id.* Yet nowhere in the Complaint does Plaintiff allege that she was actually logged into Facebook when she viewed videos on HGTV.com. *Id.* ¶¶ 51-66. Plaintiff

[1] Following Facebook's name change to Meta, the tool is now called the Meta Pixel. For the purposes of this motion, Scripps refers to the tool as "the Meta Pixel" or "the Pixel".

thus never alleges that information from the c_user cookie was actually transmitted, and she therefore fails to allege that **unencrypted Facebook IDs were ever actually transmitted**.

As for the fr cookie and _fbp cookies, Plaintiff alleges that the fr cookie "contains, at least, an encrypted Facebook ID and browser identifier" and that the _fbp cookie "contains, at least, an unencrypted value that uniquely identifies a browser." *Id.* ¶ 26. Both cookies are allegedly transmitted regardless of whether the website visitor is logged into Facebook or has a Facebook account. *Id.* ¶¶ 25-27, nn.25, 30. But these cookies do not contain PII. Plaintiff never alleges that ordinary persons could unencrypt the fr cookie's Facebook ID, an ID which is encrypted by Facebook. Similarly, Plaintiff does not adequately explain how a "browser identifier" permits ordinary persons to identify them; she does not, for instance, allege that browser identifiers contain her name. *Id.* ¶¶ 26, 28, 47, 48.

Plaintiff further alleges that Scripps uses Advanced Matching, a Pixel feature that scans "for recognizable form field and other sources on your website that contain information such as first name, last name, and email." *Id.* ¶ 35. Plaintiff notes that when information is transmitted through Advanced Matching, it is "'hashed,' meaning it is '[a] computed summary of digital data that is a one-way process[,]'" and "cannot be reversed back into the original data." *Id.*[2] Plaintiff alleges that when she input her email address to sign up for the Newsletter, Scripps disclosed her email address to Facebook through the Facebook Tracking Pixel's Advanced Matching feature.

---

[2] Hashing converts email addresses into strings of numbers and letters; actual email addresses are not transmitted. *See* Meta for Developers, *Advanced Matching*, https://developers.facebook.com/docs/meta-pixel/advanced/advanced-matching (last visited Mar. 20, 2025) (cited in Plaintiff's Complaint at footnote 43). The Court can consider the sources cited in the Complaint to be incorporated into the Complaint by reference. *In re PetroChina Co. Sec. Litig*., 120 F. Supp. 3d 340, 354, 368 (S.D.N.Y. 2015), *aff'd sub nom. Klein v. PetroChina Co.,* 644 F. App'x 13 (2d Cir. 2016) (considering the text of a cited announcement to be incorporated by reference into plaintiffs' complaint).

*See* SAC ¶¶ 35, 53. Plaintiff, however, does not allege that she ever provided her name to Scripps or that her name was collected by Facebook through the HGTV.com website in any manner.

Plaintiff alleges that "[t]hrough the Facebook Tracking Pixel's code, these cookies combine the identifiers with the event data," and that identifiers are disclosed "alongside event data for videos[.]" *Id.* ¶¶ 34, 45-48. She also alleges in a conclusory fashion that Scripps knew Facebook would combine event data with identifiers, and that Scripps "knowingly disclosed" Plaintiff's information to "build audiences on Facebook and retarget them for its advertising campaigns." *Id.* ¶¶ 54, 74.[3] But Plaintiff never adequately explains *how* Facebook combines Facebook IDs, browser identifiers, and email addresses with event data or how Scripps knows that Facebook *is* doing so. Furthermore, the Pixel was removed from the HGTV.com website as of March 2022. *See* Winkler Decl. at ¶ 8.

## LEGAL STANDARD FOR MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(1) requires dismissal of a complaint "for lack of subject matter jurisdiction if the court 'lacks the statutory or constitutional power to adjudicate it,' such as when . . . the plaintiff lacks constitutional standing to bring the action." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.á.r.l.*, 790 F.3d 411, 416-17 (2d Cir. 2015) (citations omitted). On a 12(b)(1) motion to dismiss based on a plaintiff's lack of standing, defendants may challenge the plaintiff's standing by proffering evidence beyond the complaint to demonstrate the existence of factual problems underlying the plaintiff's claims. *See Dakus v. Koninklijke Luchtvaart Maatschappij, N.V.*, No. 22-cv-7962, 2023 WL 5935694, at *3 (S.D.N.Y. Sept. 12, 2023). Indeed, "[w]here jurisdictional facts are placed in dispute, the court has the power and

[3] Plaintiff vaguely references an off-site activity report, but it is not clear what this third-party document demonstrates concerning Scripps' knowledge. SAC at Figure 18.

obligation to decide issues of fact by reference to evidence outside the pleadings[.]" *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). When analyzing a factual challenge, "no presumptive truthfulness attaches to the complaint's jurisdictional allegation; rather, the burden is on the plaintiff to satisfy the Court, as fact-finder, of the jurisdictional facts." *Dakus*, 2023 WL 5935694 at *3.

A complaint must also be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it lacks "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining a complaint's adequacy, a court must disregard conclusory allegations and legal conclusions, which are not entitled to the assumption of truth, and determine whether the remaining "well-pleaded factual allegations" suggest that the plaintiff has a plausible—as opposed to merely conceivable—claim for relief. *Id.* at 679. This District has recognized that in VPPA actions, plaintiffs' allegations must "raise a right of relief above the speculative level." *Austin-Spearman v. AMC Network Ent. LLC*, 98 F. Supp. 3d 662, 665 (S.D.N.Y. 2015); *Wilson v. Triller, Inc.*, 598 F. Supp. 3d 82, 88 (S.D.N.Y. 2022).

## ARGUMENT

## I. PLAINTIFF LACKS ARTICLE III STANDING

Plaintiff fails to allege a concrete injury that would give her standing to bring a VPPA claim against Scripps for any claims from 2022 because it is factually impossible for her to have suffered any injury in the way that she alleges in her Second Amended Complaint. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) ("[A] plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016) ("[Even] named plaintiffs who represent a class 'must

allege and show that they personally have been injured[.]'"). Plaintiff's claimed injury stems from her allegations that HGTV actively collected and transmitted her PII Facebook through the Pixel when she watched videos on HGTV.com. *See e.g.*, SAC ¶¶ 16, 24-25, 36-37, 49. Specifically, Plaintiff alleges her information was collected when she watched videos since 2018 ending sometime in 2021 or 2022, and further alleges that she had a relationship with HGTV by remaining subscribed to the HGTV digital newsletter since at least 2018. SAC ¶ 52.

However, Scripps' internal records indicate that Plaintiff's allegations do not sufficiently confer standing for a violation of the VPPA.[4] Plaintiff's allegations are based on her subscription to the Newsletter, but she unsubscribed from the Newsletter in January 2022. *See* Winkler Decl. at ¶ 7.[5] Not only that, but Scripps has no record of Plaintiff visiting HGTV.com since August 2021, and thus there is no indication that Plaintiff watched videos on the HGTV.com website at all in 2022. Winkler Decl. at ¶ 6. Furthermore, Scripps removed the Pixel from all HGTV.com video pages on March 17, 2022, nearly three years before Plaintiff filed the SAC. Winkler Decl.

[4] It is proper for Scripps to cite to its subscription and viewership records because defendants may challenge a plaintiff's standing by proffering evidence beyond the complaint to demonstrate the existence of factual problems underlying the plaintiff's claims. *See Dakus*, 2023 WL 5935694, at *3. Indeed, "[w]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings[.]" *Tandon*, 752 F.3d at 243. When analyzing a factual challenge, "no presumptive truthfulness attaches to the complaint's jurisdictional allegations; rather the burden is on the plaintiff to satisfy the Court, as fact-finder, of the jurisdictional facts." *Dakus*, 2023 WL 5935694 at *3.

[5] While Plaintiff attempts to call into question Scripps' records (ECF No. 26), these records confirm that Plaintiff subscribed years earlier than what was originally alleged—when the Newsletter utilized a different mailer. Plaintiff originally contended that she had been enrolled in the Newsletter "[w]ithin the last two years." Complaint (ECF No. 1), ¶ 52; First Amended Complaint (ECF No. 9), ¶ 52. Scripps' records show, however, that Plaintiff was not enrolled in the Newsletter in the last two years. *See* Winkler Decl. ¶ 7. Indeed, as Plaintiff herself now acknowledges, she subscribed to the Newsletter earlier on, when a different mailer was in use. *See* SAC ¶ 52 ("Since at least 2018, Plaintiff has been enrolled in Defendant's newsletter."). Plaintiff ultimately unsubscribed from the Newsletter in January 2022, that is why she was not found as a subscriber to the Newsletter. Winkler Decl. ¶ 7.

at ¶ 8. As such, Plaintiff's suffered no injury in 2022, and lacks standing to bring a claim for any alleged disclosures occurring in that year. Indeed, the factual record is insufficient to show "by a preponderance of the evidence that [standing] exists" for those claims. *Tandon*, 752 F.3d at 243 (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). Plaintiff, accordingly, has shown no injury in fact for the year 2022, and therefore has no standing to bring this VPPA claim against Scripps. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 566-67 (1992).

## II. PLAINTIFF'S REMAINING CLAIMS ARE TIME BARRED

To the extent Plaintiff alleges there were any disclosures prior to 2022, these delayed claims are time barred under the VPPA's two-year statute of limitations. 18 U.S.C. § 2710(c)(3). The original Complaint was filed in October 2024, and thus the statute of limitation bars any claims from before October 2022. As previously mentioned, Scripps has no record of Plaintiff visiting the HGTV.com website since August 2021. Winkler Decl. at ¶ 6. This is more than three years since the original Complaint was filed and thus over one year before the statute of limitations. Likewise, Plaintiff also fails to allege any specific instances in the two years preceding her original October 2024 complaint where Scripps disclosed her PII to Facebook. Nor could she, because Scripps removed the Meta Pixel from all video pages prior to October 2022. Winkler Decl. at ¶ 8. Thus, Plaintiff's claims have already accrued and Plaintiff failed to sufficiently allege that she has any valid claims between October 2022 and October 2024—the applicable limitations period.

Moreover, Plaintiff cannot avail herself of tolling. Plaintiff's SAC is completely devoid of allegations supporting the application of any tolling doctrines, including the discovery rule. See, e.g., *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 995 F. Supp. 2d 291, 310 (S.D.N.Y. 2014) (discovery rule not applicable where plaintiff did not plead facts suggesting it could be applied), *aff'd sub nom. SRM Glob. Master Fund L.P. v. Bear Stearns Cos.*, 829 F.3d 173

(2d Cir. 2016). Because Plaintiff did not plead any facts regarding discovery, she cannot now rely on the doctrine.

Plaintiff also cannot rely upon the discovery rule because it requires her to have brought her claim after she discovered the alleged violation, or could have discovered it with reasonable diligence. *See Javier v. Assurance IQ, LLC*, No. 20-cv-02860, 2023 WL 3933070, at *3 (N.D. Cal. June 9, 2023) (finding the plaintiff was on inquiry notice of a wiretapping claim based on the applicable privacy policy). When Plaintiff signed up, she entered her email. SAC ¶ 53; Winkler Decl. ¶ at 3. A hyperlink to the applicable Privacy Policy was available directly above the sign-up button. *See* Winkler Decl. at ¶ 4. Plaintiff thus knew or should have known based on an exercise of reasonable diligence that the HGTV.com website would collect and disclose certain user information. *See Ramiro Aviles v. S & P Glob., Inc.*, 380 F. Supp. 3d 221, 277 (S.D.N.Y. 2019) ("Determining when discovery was reasonably possible turns on when Plaintiffs 'w[ere] 'possessed of knowledge of facts from which [the fraud] could be reasonably inferred.'""). Since 2018, the Privacy Policy has informed website visitors that information regarding how they use the website may be collected and that the website utilized cookies and other tracking technologies. Winkler Decl. at ¶ 5. Plaintiff was therefore on notice as to how HGTV would collect and disclose her information when she signed up for the Newsletter and cannot amend her complaint again to assert the discovery rule tolled her claims. *See Ramiro*, 380 F. Supp. 3d at 278-79 (declining to toll claims under discovery rule where, among other things, investment fund posted link on its website alerting plaintiffs to issues related to the claims they were now seeking to bring). Scripps informed Plaintiff of this deficiency in its pre-motion letter (ECF No. 23). Plaintiff's response letter stated that she could provide an amended complaint providing a discovery date, but when given the opportunity to amend, Plaintiff informed the Court she did not wish to amend further.

*See* ECF No. 28 ("At the initial pre-trial conference, plaintiff was offered the opportunity to further amend the Complaint, and plaintiff does not wish to amend.").

Furthermore, the prior class action asserted against Scripps, *Carter v. Scripps Networks, LLC*, also does not toll Plaintiff's claims. *See* 670 F. Supp. 3d 90 (S.D.N.Y. Apr. 24, 2023) (Castel, J.). First, Plaintiff fails to plead that *Carter* tolls her claims in her SAC. Indeed, *Carter* is not mentioned at all in the SAC. Second, even if she did plead that *Carter* tolled the statute of limitations, her claims would still be untimely. In *Carter*, the claims were pending for thirteen months, meaning a claim with *American Pipe* tolling would need to have been filed by September 2021—two years and thirteen months before Plaintiff's original Complaint. Accordingly, even if *American Pipe* tolling applied here, Plaintiff still filed her original Complaint too late. Scripps has no record of Plaintiff viewing any video content on the HGTV.com website after August 2021, which places her outside the additional thirteen months that could have been afforded by *American Pipe*. Her claims are time-barred for this reason as well. [6]

These factual and tolling deficiencies are fatal to Plaintiff's claims, and permitting her to further amend her complaint would be futile. No amount of amendment will remedy Plaintiff's

---

[6] Additionally, even if Plaintiff alleged she had a claim two years and thirteen months before filing the original Complaint, the Complaint would still be time-barred because the HGTV Visitor Agreement provides a one-year limitations period. Under New York law, parties may agree to a shorter limitations period as long as the period is not unreasonably short and is clearly set forth in the contract. *Newmont Mining Corp. v. AngloGold Ashanti Ltd.*, 344 F. Supp. 3d 724, 748 (S.D.N.Y. 2018). The HGTV.com Visitor Agreement is available via hyperlink on every HGTV.com page and provides that "any dispute, claim or controversy arising out of or relating in any way to the service or your use of the service and/or Discovery Sites, . . . must be commenced within one year of the relevant events." *See* Warner Bros. Discovery, Discovery Visitor Agreement (updated January 2023), https://www.wbd.com/discovery-visitor-agreement/. Because HGTV.com and its alleged information collection practices are central to Plaintiff's allegations, the website, including the Visitor Agreement is incorporated by reference and can be considered "in its totality." *See Orozco v. Fresh Direct, LLC*, No. 15-CV-8226, 2016 WL 5416510, at *5 (S.D.N.Y. Sept. 27, 2016); *see also Triller*, 598 F. Supp. 3d, at 87 (finding Terms of Use to be incorporated by reference into a complaint alleging a VPPA claim).

inability to "come forward with evidence of [her] own" showing that her PII was collected within the two year statute of limitations. *Dakus*, 2023 WL 5935694, at *3. The Court therefore need not grant Plaintiff leave to amend. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to amend.") (*citing Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## III. PLAINTIFF FAILS TO STATE A CLAIM TO RELIEF UNDER THE VPPA

### A. Plaintiff Has Not Alleged Necessary Conditions for Disclosure

According to Plaintiff, Scripps allegedly compels HGTV.com visitors' browsers to transmit cookies to Facebook, including c_user cookies which contain HGTV.com visitors' unencrypted Facebook IDs. But by Plaintiff's own admission, the c_user cookie is only transmitted to Facebook if a user watches videos on HGTV.com while logged into Facebook. SAC ¶ 24. Even if Plaintiff were able to state a valid claim within the statute of limitations and while the Meta Pixel was enabled on HGTV.com's video pages, Plaintiff has crucially never specifically alleged that she was logged into Facebook while she watched videos. *See e.g.,* SAC ¶ 52 (alleging only that Plaintiff watched videos on HGTV.com). Similarly, Plaintiff has made no allegation that she did not clear cookies or that she refrained from using a browser that automatically blocks cookies. *See Martinez v. D2C, LLC*, No. 23-21394, 2024 WL 4367406, at *7-8 (S.D. Fla. Oct. 1, 2024). Because she did not allege the necessary conditions for disclosure, Plaintiff therefore cannot not demonstrate that her unencrypted Facebook ID was ever transmitted to Facebook in this case. SAC ¶¶ 24, 51-54. This threshold deficiency in the SAC means that Plaintiff has failed to allege that Scripps transmitted PII.

B. Plaintiff Has Not Plausibly Alleged that Scripps Knowingly Disclosed PII

The VPPA specifies that PII "includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider[.]" 18 U.S.C. § 2710(a)(3). As such, "[f]or there to be an actionable VPPA violation, the video provider must have knowingly disclosed . . . three distinct elements []: the consumer's identity; the video material's identity; and the connection between them." *See In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015). Here, Plaintiff has failed to allege any facts making it plausible that Scripps knowingly disclosed information constituting PII to Meta.

***1. No Alleged Disclosure of Plaintiff's Identity***

In addition, Plaintiff has failed to plausibly allege that any information was transmitted that identified her via the c_user cookie. As Scripps previously identified to Plaintiff, the Facebook ID used in both the original Complaint the SAC does not lead to Plaintiff's profile—in fact, it does not lead to any person's profile at all.[7] Courts analyzing similar issues, including in the Second Circuit, have found that the transmission of a Facebook ID by itself does not constitute PII. *See Ghanaat v. Numerade Labs*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023) (disclosure of a Facebook ID is not PII unless "it leads to a Facebook page that discloses personal and identifying information about the consumer."); *see also Solomon v. Flipps Media, Inc.*, No. 22-cv-5508, 2023 WL 6390055, at *3 (E.D.N.Y. Sept. 30, 2023) ("The Court finds the reasoning in *Ghanaat* persuasive and adopts it here."), *appeal filed*, No. 23-7597 (2d Cir. Nov. 1, 2023). Here, Plaintiff makes no allegation that her public Facebook profile contains any of her personal and identifying information. *See Smith v. Trinity Broad. of Tex., Inc.*, No. 8:24-cv-01046, 2024 WL 4394557, at

[7] One can visit a profile associated with a numeric Facebook ID by typing in the number following the facebook.com URL while logged in to Facebook, *i.e.*, by typing in www.facebook.com/[Facebook ID number].

*3 (C.D. Cal. Sept. 27, 2024) (dismissing VPPA claim where the plaintiff did not "indicate that her profile [was] public and contain[ed] any identifying information or photos."). As a result, she has not adequately pled that her identity was disclosed.[8]

The other cookies the SAC discusses—which contain encrypted Facebook IDs and browser identifiers—do not constitute PII under the VPPA. *See* SAC ¶ 26. In *Bernardino v. Barnes & Noble Booksellers, Inc.*, No. 17-CV-04570, 2017 WL 3727230, at *8-9 (S.D.N.Y. Aug. 11, 2017), *adopted by*, 2017 WL 3726050 (S.D.N.Y. Aug. 28, 2017), plaintiff argued that Facebook's fr cookie constituted PII under the VPPA. The Court disagreed, denying plaintiff's requested injunction, and finding specifically with respect to the Facebook fr cookie that because "there is no binding precedent to support [the plaintiff's] interpretation of PII and, on the contrary, there is case law to support Barnes & Noble's position that the alleged disclosure may not constitute PII, [plaintiff] has not made a clear and substantial showing of success on the merits." *Id*. at *9.

Instead, PII means information that would enables an ordinary person to "identify a specific individual's video-watching behavior." *See Triller*, 598 F. Supp. 3d at 91 (quoting *In re Nickelodeon*, 827 F.3d 262, 290 (3d Cir. 2016)); *see also Solomon*, 2023 WL 6390055, at *2. Here, Plaintiff has not pled at all how the encrypted Facebook IDs and browser identifiers allegedly transmitted could be used by an ordinary person without access to Meta's analytics tools to identify any specific user or link the user to their watch history. If a Facebook ID is encrypted, as in the

[8] While *Lee v. Springer Nature Am., Inc.*, No. 24-cv-4493, 2025 WL 692152 (S.D.N.Y. Mar. 4, 2025) holds a Facebook ID is capable of identifying an individual, the court did not adequately consider the possibility that a Facebook ID may not lead to a real person. Furthermore, the court does not adequately address the holding of *Robinson v. Disney Online*, which held that PII is information "which must itself do the identifying that is relevant for purposes of the VPPA (literally, 'information which identifies')—not information disclosed by a provider, plus other pieces of information collected elsewhere by non-defendant third parties." *See* 152 F. Supp. 3d 176, 182 (S.D.N.Y. 2015).

case of the fr cookie, it would not be decipherable by an ordinary person, because only those with the encryption key could unencrypt it. *See In re Keurig Green Mountain Single-Serve Coffee Antitrust Lit.*, 341 F.R.D. 474, 500 (S.D.N.Y. 2022) ("The computers Keurig issued to its employees were encrypted, meaning they could only be accessed using an encryption key."). Indeed, "information which is not otherwise PII [cannot] somehow become PII because of the potential, however remote, of a third party to '**reverse engineer**' a disclosure using data gathered from other sources." *Robinson*, 152 F. Supp. 3d at 178, 183 (emphasis added).[9]

As for browser identifiers, Plaintiff does not allege that this information contains her name or otherwise identifies her, and therefore fails to establish that browser identifiers constitute PII. SAC ¶¶ 26, 28, 47, 48. Plaintiff also does not rule out the possibility that browser identifiers simply identify the browser she used to access HGTV.com, which plainly would not be sufficient for an ordinary person to identify HGTV.com visitors. Plaintiff simply alleges (without more) that by disclosing "browser identifiers alongside event data for videos, HGTV discloses information sufficiently permitting an ordinary person to identify a specific individual's video viewing behavior." *Id.* ¶ 48.

This naked conclusion is not enough to support Plaintiff's claim, and the sources Plaintiff cites in her SAC do not explain how browser identifiers could identify them. Facebook's Cookies Policy, which Plaintiff cites in footnotes 28 and 29, does not explain how browser identifiers permit ordinary people to identify specific individuals. Facebook, *Cookies Policy*,

[9] Plaintiff also omits that, according to the same report that she cites in footnote 26 of the SAC, the Facebook ID in the fr cookie is "re-encrypted **every hour** to a different value." Data Protection Comm'r, *Facebook Ireland Ltd: Report of Re-Audit*, at 33 (Sept. 21, 2012), http://www.europe-v-facebook.org/ODPC_Review.pdf (emphasis added). This frequent re-encryption makes it even more unlikely that an ordinary person would be able to use the fr cookie to identify specific HGTV.com visitors.

https://www.facebook.com/policy/cookies/. Similarly, the webpage that Plaintiff cites at footnote 27 when discussing the _fbp cookie suffers from this same lack of clarity as to browser identifiers. Meta for Developers, *Conversion API*, https://developers.facebook.com/docs/marketing-api/conversions-api/parameters/fbp-and-fbc/.[10] At most, this webpage shows a string of letters and numbers in depicting what the value of the fbp cookie "could look like."

**Figure A**

```
fb.1.1596403881668.1116446470
```

Plainly, an ordinary person would not know where to even begin to identify an HGTV.com visitor from this indecipherable list of numbers.

Plaintiff instead pleads only that "HGTV knows Facebook will match the Advanced Matching parameters with a subscriber's subsequent activity[.]" SAC ¶ 40. That vague allegation does not help Plaintiff. Indeed, this District has dismissed a VPPA claim where the plaintiff failed to allege that a defendant social media app operator disclosed PII, noting that "as alleged," third parties had to "pair" the user's app assigned identification number "with information from a user's [app] profile page, which may or may not contain various personal information about the user[.]" *Triller,* 598 F. Supp. 3d at 92 (alteration in original).

### *2. Insufficient Allegations as to Scripps' Knowledge*

Even if there were any PII disclosed by the Pixel, which there is not, it was disclosed by Meta, not Scripps. It is Meta who places cookies on an individual's browsers and receives the information from them. *See Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 948 (N.D. Cal. 2017) ("Facebook puts cookies on visitors' computers."); *aff'd*, 745 F. App'x 8 (9th Cir. 2018); *In re*

[10] The Court can consider the sources cited in Plaintiff's Complaint in resolving the motion. *In re PetroChina*, 120 F. Supp. 3d at 354, 368.

*Hulu Priv. Litig.*, No. C 11-03764, 2014 WL 2758598, at *5 (N.D. Cal. June 17, 2014) (Facebook sets the c_user cookie."). Any transmission here, was merely one from Meta to itself. *See Austin-Spearman*, 98 F. Supp. 3d at 664 ("In particular, through its 'c_user' cookie, Facebook's code allegedly forces a user's web browser to look for the user's Facebook ID."). Here, the SAC similarly alleges that the HGTV.com website "compel[s] ***a visitor's browser to disclose***" information to Meta. SAC ¶¶ 45-48 (emphasis added). Plaintiff plainly has not alleged that Scripps discloses PII. [11]

Lastly, even if Plaintiff did adequately allege that Scripps disclosed PII under the VPPA—which she has not—Plaintiff still has not sufficiently alleged that Scripps *knowingly* disclosed any information that "identifies a person as having requested or obtained specific video materials[.]" 18 U.S.C. §§ 2710(a)(3), 2710(b)(1). As this District has held, it is not enough to allege that Scripps knew that Facebook had the capability to use PII to match users with their video watching history. *Bernardino*, 2017 WL 3727230, at *9. Plaintiff must specifically allege that Scripps knew the information it was conveying was PII, "regardless of whether it knew what Facebook might do with the information." *Id.* And here, while Plaintiff alleged that the Meta Pixel and Facebook have certain capabilities to transmit PII and match that information to users, she still has not met her burden to adequately allege that HGTV knew that the data being collected and transmitted by the Meta Pixel was HGTV.com users' PII. She instead merely relies on the fact that the Meta Pixel was active on HGTV.com to conclude that HGTV made knowing disclosures of PII, which by itself is insufficient. SAC ¶¶ 45, 46. Moreover, Plaintiff does not allege that Scripps knew or

---

[11] Cases such as *Czarnionka v. Epoch Times Ass'n*, No. 22 Civ. 6348, 2022 WL 17069810 (S.D.N.Y. Nov. 17, 2022) and *Aldana v. GameStop, Inc.*, No. 22-CV-7063, 2024 WL 708589 (S.D.N.Y. Feb. 21, 2024) do not establish otherwise, as the court there did not dispute that the c_user cookie is Meta's cookie, or that Meta deposits the cookie on the users' browsers.

could access Plaintiff's identifying information, thus Scripps cannot be charged with disclosing such information. *See Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 986 (9th Cir. 2017) (rejecting VPPA claim where the defendant "never disclosed and apparently never even possessed" the information that would allow a third party to identify an individual). As a result, Plaintiff fails to allege Scripps knowingly disclosed her PII in violation of the VPPA.

C. Plaintiff Does Not Allege the Newsletter Contained the Pixel

Plaintiff fails to allege the Newsletter itself contains the Pixel, thus receipt of the Newsletter in and of itself does not violate the VPPA. Indeed, the Plaintiff's claims all arise from her use of the HGTV.com website. *See* SAC ¶ 52. Because Plaintiff points only to the Pixel in stating her alleged VPPA violation, she cannot make any independent claim arising from her subscription to the Newsletter.[12]

## CONCLUSION

For all the foregoing reasons, Scripps respectfully requests that the Court dismiss the Second Amended Complaint in its entirety with prejudice.

---

[12] Plaintiff has previously argued her allegations are sufficient under the Second Circuit's ruling in *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533 (2d Cir. 2024) (*petition for cert. filed*, March 14, 2025). Regardless of the *Salazar* decision, Plaintiff cannot deny that the Newsletter itself does not contain the Pixel and therefore cannot be an independent basis of liability. Plaintiff's claims regarding watching videos on the website also fail for the reasons stated above. *See, supra* Sections III.A, III.B.

Dated: March 24, 2025

Respectfully submitted,

*/s/ David L. Yohai*
David L. Yohai
David R. Singh
Blake J. Steinberg

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Phone: (212) 310-8000
Fax: (212) 310-8007
david.yohai@weil.com
david.singh@weil.com
blake.steinberg@weil.com

*Attorneys for Defendant Scripps Networks, LLC*

**Word Count Certification**

Pursuant to Local Rule 7.1(c), I hereby certify that the total number of words in this memorandum, excluding the caption, table of contents, table of authorities, signature block, and word count certification is 5,781.

/s/ *David L. Yohai*
David L. Yohai