**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CONSTANCE SIMON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SCRIPPS NETWORKS, LLC,<br><br>Defendant. | Case No. 1:24-CV-08175-PKC |

**<u>PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ..........1
ARGUMENT ..........3
I. PLAINTIFF HAS ARTICLE III STANDING ..........3
II. PLAINTIFF'S CLAIMS ARE TIMELY ..........7
III. PLAINTIFF SUFFICIENTLY PLEADS A VPPA CLAIM ..........13
A. Plaintiff Sufficiently Alleges Defendant Disclosed Plaintiff's PII And Did So Knowingly ..........13
1. Defendant Disclosed Plaintiff's PII ..........13
2. Defendant Disclosed Plaintiff's PII Knowingly ..........18
B. Plaintiff Need Not Allege The Newsletter Contained The Pixel ..........20
CONCLUSION ..........22

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Ade v. Viki, Inc.*,
2024 WL 1880153 (N.D. Cal. Mar. 28, 2024) ........ 8, 10

*Aldana v. GameStop, Inc.*,
2024 WL 708589 (S.D.N.Y. Feb. 21, 2024) ........ 2, 14, 15, 18

*American Pipe & Constr. Co. v. Utah*,
414 U.S. 538 (1974) ........ 13

*Arista Records, LLC v. Doe 3*,
604 F.3d 110 (2d Cir. 2010) ........ 20

*Austin-Spearman v. AMC Network Ent. LLC*,
98 F. Supp. 3d 662 (S.D.N.Y. 2015) ........ 3

*Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
995 F. Supp. 2d 291 (S.D.N.Y. 2014) ........ 9

*Belozerov v. Gannett Co.*,
646 F. Supp. 3d 310 (D. Mass. 2022) ........ 2, 19

*Belyakov v. We Are Constantly Thinking, Designing, & Eating LLC*,
2021 WL 3788963 (S.D.N.Y. Aug. 26, 2021) ........ 20

*Berkson v. Gogo LLC*,
97 F. Supp. 3d 359 (E.D.N.Y 2015) ........ 11

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
2017 WL 3727230 (S.D.N.Y. Aug. 11, 2017) ........ 15

*Berryman v. Reading Int'l, Inc.*,
2025 WL 315403 (S.D.N.Y. Jan. 28, 2025) ........ 21

*Collins v. Pearson Educ., Inc.*,
721 F. Supp. 3d 274 (S.D.N.Y. 2024) ........ 2, 4, 5, 9

*Czarnionka v. Epoch Times Ass'n, Inc.,*
2022 WL 17069810 (S.D.N.Y. Nov. 17, 2022) ........ passim

*Davis v. Wells Fargo*,
824 F. 3d 333 (3d Cir. 2016)....... 4

*Edmundson v. Klarna, Inc.*,
85 F.4th 695 (2d Cir. 2023) ....... 11

*Energy Intelligence Grp., Inc. v. Jefferies, LLC*,
101 F. Supp. 3d 332 (S.D.N.Y. 2015)....... 20

*Feldman v. Star Trib. Media Co. LLC,*
659 F. Supp. 3d 1006 (D. Minn. 2023)....... 2

*Gardner v. Me-TV Nat'l Ltd. P'ship*,
132 F.4th 1022 (7th Cir. 2025) ....... 21

*Ghanaat v. Numerade Labs, Inc.*,
689 F. Supp. 3d 714 (N.D. Cal. 2023) ....... 16

*Goel v. Bunge, Ltd.*,
820 F.3d 554 (2d Cir. 2016)....... 4

*Golden v. NBCUniversal Media, LLC*,
688 F. Supp. 3d 150 (S.D.N.Y. 2023)....... 14

*Harris v. Mills*,
572 F.3d 66 (2d Cir. 2009)....... 10

*Harris v. Pub. Broad. Serv.*,
662 F. Supp. 3d 1327 (N.D. Ga. 2023) ....... 2, 19

*Hines v. Overstock.com, Inc.*,
668 F. Supp. 2d 362 (E.D.N.Y 2009) ....... 11

*In re Gen. Elec. Sec. Litig.*,
844 F. App'x 385 (2d Cir. 2021) ....... 13

*In re Hulu Priv. Litig.*,
86 F. Supp. 3d 1090 (N.D. Cal. 2015) ....... 15

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
341 F.R.D. 474 (S.D.N.Y. 2022) ....... 16

*In re State Police Litig.*,
888 F. Supp. 1235 (D. Conn. 1995)....... 8

*Javier v. Assurance IQ, LLC*,
2023 WL 3933070 (N.D. Cal. June 9, 2023)....... 10

*Katz v. Donna Karan Co., L.L.C.*,
872 F.3d 114 (2d Cir. 2017)........................................................................................... 5

*Lamb v. Forbes Media LLC*,
2023 WL 6318033 (S.D.N.Y. Sept. 28, 2023)......................................................... 5, 6, 14, 18

*Lee v. Springer Nature Am., Inc.*,
2025 WL 692152 (S.D.N.Y. Mar. 4, 2025) .................................................................... passim

*Lyons v. Litton Loan Servicing LP*,
158 F. Supp. 3d. 211 (S.D.N.Y. 2016)................................................................................ 4

*Murphy Med. Assocs., LLC v. Centene Corp.*,
2023 WL 2384143 (D. Conn. Mar. 6, 2023) ....................................................................... 7

*Newmont Mining Corp. v. AngloGold Ashanti Ltd.*,
344 F. Supp. 3d 724 (S.D.N.Y. 2018)................................................................................ 12

*Newsom-Lang v. Warren Intern.*,
129 F. Supp. 2d 662 (S.D.N.Y. 2001).................................................................................. 4

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ........................................................................................... 10

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016)............................................................................................... 10

*Ramiro Aviles v. S & P Glob., Inc.*,
380 F. Supp. 3d 221 (S.D.N.Y. 2019).................................................................................. 9

*Robinson v. Disney Online*,
152 F. Supp. 3d 176 (S.D.N.Y. 2015)........................................................................... 15, 16

*Ronderos v. USF Reddaway, Inc.*,
114 F.4th 1080 (9th Cir. 2024) ..................................................................................... 11, 12

*Sacerdote v. New York Univ.*,
9 F.4th 95 (2d Cir. 2021) ..................................................................................................... 9

*Saint-Jean v. Emigrant Mortg. Co.*,
129 F.4th 124 (2d Cir. 2025) ............................................................................................ 7, 8

*Salazar v. Nat'l Basketball Ass'n*,
118 F.4th 533 (2d Cir. 2024) ............................................................................... 2, 3, 20, 21

*Singh v. Deloitte LLP*,
123 F.4th 88 (2d Cir. 2024) ................................................................................................. 9

*Sitt v. Nature's Bounty, Inc.*,
2016 WL 5372794 (E.D.N.Y. Sept. 26, 2016) ............ 6

*Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*,
999 F.3d 828 (2d Cir. 2021)............ 10

*Solomon v. Flipps Media, Inc.*,
2023 WL 6390055 (E.D.N.Y. Sept. 30, 2023) ............ 16

*Starke v. SquareTrade, Inc.*,
913 F.3d 279 (2d Cir. 2019)............ 10

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)............ 3

*United States ex rel. Daugherty v. Tiversa Holding Corp.*,
342 F. Supp. 3d 418 (S.D.N.Y. 2018)............ 7

*Vincent v. Nat'l Debt Relief LLC*,
2024 WL 3344227 (S.D.N.Y. July 8, 2024) ............ 11

*Wilson v. Triller, Inc.*,
598 F. Supp. 3d 82 (S.D.N.Y. 2022)............ 12, 16, 17

*Yershov v. Gannett Satellite Info. Network, Inc.*,
820 F.3d 482 (1st Cir. 2016) ............ 21

**STATUTES**

18 U.S.C. § 2710(c)(3)............ 5, 7

18 U.S.C. §§ 2710(a)(3), 2710(b)(1) ............ 18

**RULES**

Fed. R. Civ. P. 15(a) ............ 22

Fed. R. Civ. P. 9(b) ............ 20

**OTHER AUTHORITIES**

S. Rep. 100-599............ 1

Plaintiff Constance Simon ("Plaintiff") respectfully submits this Opposition to Defendant Scripps Networks, LLC's ("Scripps" or "Defendant") Motion to Dismiss (ECF No. 30) (the "Motion" or "MTD").

## INTRODUCTION

> [A]s we continue to move ahead, we must protect time honored values that are so central to this society, particularly our right to privacy. The advent of the computer means not only that we can be more efficient than ever before, but that we have the ability to be more intrusive than ever before. Every day Americans are forced to provide to businesses and others personal information without having any control over where that information goes. Those records are a window into our loves, likes, and dislikes.

S. Rep. 100-599, at 7-8 (1988) (remarks by Senator Paul Simon). Much has changed since 1988, but Senator Simon's words continue to ring true. At its most basic level, Plaintiff's complaint asks whether we continue to "protect time honored values that are central to this society, particularly our right to privacy."

Defendant operates www.hgtv.com ("the Website") which "hosts and delivers hundreds of videos, featuring 'home and lifestyle content.'" *See* Second Amended Complaint (ECF No. 22) ("SAC") ¶¶ 2, 56. Defendant's Website utilizes the Facebook Tracking Pixel, which is "a piece of code that advertisers, like Defendant, can integrate into their website." *Id.* ¶ 12. "Once activated, the Facebook Tracking Pixel 'tracks the people and type of actions they take.'" *Id.* (quoting Facebook's documentation).

When a visitor navigates to the Website, Defendant "transmits nine distinct events to Facebook." *Id.* ¶ 16. The event data "permit an ordinary person to identify a video's content, title, and URL." *Id.* ¶ 23. Defendant sends this data to Facebook alongside the c_user cookie, which contains an "unencrypted Facebook ID." *Id.* ¶ 24. Defendant also uses "Advanced Matching," which transmits to Facebook "information such as first name, last name, and email." *Id.* ¶ 35. Defendant thus "knowingly discloses information sufficiently permitting an ordinary person to

identify a specific individual's video viewing behavior." *Id.* ¶¶ 45-48. As courts in this District and elsewhere have held, these allegations suffice to plead a violation of the VPPA. *See*, *e.g.*, *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533 (2d Cir. 2024); *Aldana v. GameStop, Inc.*, 2024 WL 708589 (S.D.N.Y. Feb. 21, 2024), *motion to certify appeal denied*, 2024 WL 3104345 (S.D.N.Y. June 24, 2024); *Collins v. Pearson Educ., Inc.*, 721 F. Supp. 3d 274 (S.D.N.Y. 2024); *Czarnionka v. Epoch Times Ass'n, Inc. ("Czarnionka I")*, 2022 WL 17069810 (S.D.N.Y. Nov. 17, 2022); *Lee v. Springer Nature Am., Inc.*, 2025 WL 692152 (S.D.N.Y. Mar. 4, 2025); *Belozerov v. Gannett Co.*, 646 F. Supp. 3d 310 (D. Mass. 2022); *Harris v. Pub. Broad. Serv.*, 662 F. Supp. 3d 1327 (N.D. Ga. 2023); *Feldman v. Star Trib. Media Co. LLC*, 659 F. Supp. 3d 1006 (D. Minn. 2023).

Defendant has no compelling defense. *First*, Plaintiff has Article III standing under *Salazar*. *Second*, Plaintiff's claim is timely. Plaintiff had no possible way of knowing her data was intercepted in August 2021 because Defendant's conduct was surreptitious. SAC ¶¶ 10, 12-35, 75. *Third*, Defendant discloses personally identifiable information by transmitting users' email addresses, Facebook IDs, event data, and other identifiers. SAC ¶¶ 53-54. Moreover, by intentionally installing the Facebook Tracking Pixel on its Website in the first place, Defendant discloses this personally identifiable information knowingly. *Id.* ¶¶ 8, 12, 14, 24. *Fourth*, *Salazar* instructs that Plaintiff is a subscriber under the VPPA because she exchanged personal information for access to Defendant's newsletter. *Id.* ¶¶ 38, 43, 53-54.

For the reasons stated herein, Defendant's motion should be denied.

# ARGUMENT

## I. PLAINTIFF HAS ARTICLE III STANDING

Defendant argues Plaintiff lacks Article III standing. MTD at 6-8. But that argument has been rejected by every court to consider it.

*Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 537 (2d Cir. 2024) clearly establishes Plaintiff "pled an injury that confers Article III standing." Plaintiff alleges that Defendant "disclosed to a third party, Facebook, Plaintiff's and the Class members' personally identifiable information." SAC ¶ 72. That allegation sufficiently demonstrates that Plaintiff has suffered an injury-in-fact. *Id.* at 537 ("[Plaintiff's] "core alleged harm—that h[er] personal information was disclosed to a third party, without h[er] consent, in violation of the VPPA—has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts: public disclosure of private facts.") (cleaned up, citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021)); *see also Austin-Spearman v. AMC Network Ent. LLC*, 98 F. Supp. 3d 662, 668 (S.D.N.Y. 2015) ("[plaintiff]'s allegations that AMC disclosed her personal information in violation of the VPPA, without more, therefore suffice to establish her standing to bring the present claims.").

Defendant's attempt to reframe its motion as one under Rule 12(b)(1) circumvents the proper standard for a motion to dismiss by introducing "evidence" of its own "internal records." MTD at 7. Defendant submits a declaration from "Director, Legal, Privacy and Data Strategy for Warner Bros. Discovery, Inc.," Katharina Winkler ("Winkler Decl."), "to demonstrate the existence of factual problems underlying plaintiff's claims." MTD at 7 n.4. Defendant relies entirely on this evidence outside the pleadings to argue: (i) Plaintiff "unsubscribed from the Newsletter in January 2022[,]" (ii) "[Defendant] removed the Pixel from all … video pages … nearly three years before Plaintiff filed the SAC[,]" and (iii) "Scripps has no record of Plaintiff

visiting HGTV.com since August 2021, and thus there is no indication that Plaintiff watched videos on the HGTV.com website at all in 2022." MTD at 7 (citing Winkler Decl. ¶¶ 6-8). None of these arguments warrant dismissal.

As an initial matter, on a motion to dismiss, "courts are not to 'look beyond facts stated on the face of the complaint, … documents appended to the complaint or incorporated in the complaint by reference, and … matters of which judicial notice may be taken." *Collins v. Pearson Educ., Inc.*, 721 F. Supp. 3d 274, 286, n.4 (S.D.N.Y. 2024) (VPPA case finding plaintiff had Article III standing and denying both defendant's Rule 12(b)(1) and 12(b)(6) motions) (citing *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016)). There is no question Defendant's "[Winkler] Declaration is out of bounds on a 12(b)(6) motion." *Collins*, 721 F. Supp. 3d at 286, n.4.

Courts have long recognized that such merits-based attacks cannot dislodge subject matter jurisdiction. *See, e.g.*, *Lyons v. Litton Loan Servicing LP*, 158 F. Supp. 3d. 211, 220 (S.D.N.Y. 2016) ("While standing and merits questions frequently overlap, standing is fundamentally about the propriety of the individual litigating a claim irrespective of its legal merits, while a Rule 12(b)(6) inquiry is concerned with the legal merits of the claims itself."); *Newsom-Lang v. Warren Intern.*, 129 F. Supp. 2d 662, 664 (S.D.N.Y. 2001) ("Unlike a motion to dismiss under Rule 12(b)(6), a motion to dismiss for lack of subject matter jurisdiction is not directed to the claim's merits."); *see also Davis v. Wells Fargo*, 824 F. 3d 333, 348 (3d Cir. 2016) ("We have repeatedly cautioned against allowing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction to be turned into an attack on the merits.").

Even if this court were to consider Defendant's evidence, Defendant's averments are not enough to divest this Court of jurisdiction.[1] "Although use of material outside the Complaint is proper on a Rule 12(b)(1) motion, the [Winkler] Declaration is ineffective for this purpose." *Collins*, 721 F. Supp. 3d at 283 (VPPA case finding that a declaration of "a cybersecurity professional … as ostensibly factually undermining [plaintiff]'s claim to satisfy Article III standing" was "ineffective for this purpose"); *see also Lamb v. Forbes Media LLC*, 2023 WL 6318033, at *6-*9 (S.D.N.Y. Sept. 28, 2023) (VPPA case rejecting the defendant's 12(b)(1) argument as to injury-in-fact where defendant relied on a declaration of its "Chief Data Officer"). Where, as here, a defendant makes a factual challenge under Rule 12(b)(1), "a plaintiff must 'come forward with evidence of their own to controvert that presented by the defendant,' or may instead 'rely on the allegations in their pleading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing.'" *Collins*, 721 F. Supp. 3d at 281 (citing *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017)).

*Lamb* is instructive. There, the court rejected the defendant's "fact-based Rule 12(b)(1) challenge in its motion to dismiss, relying on extrinsic evidence, namely the Declaration of [a Chief Data Officer,]" in an attempt to "contradict[] [p]laintiffs' allegations that they ever requested or obtained specific video materials[.]" 2023 WL 6318033, at *6, *8. Just like in *Lamb*, the Winkler Declaration fails to undermine Article III standing for multiple reasons.

First, it is unclear how the Winkler Declaration's assertion that Plaintiff last viewed a video in August 2021 somehow means that Plaintiff Simon was aware of its surreptitious tracking at that

[1] Defendant's argument fails because Plaintiff may bring her claim "within 2 years from the … date of discovery[,]" 18 U.S.C. § 2710(c)(3), and equitable tolling is appropriate. *See infra*, Sec. II.

same time. Second, Defendant provides no exhibits or documentation to demonstrate the accuracy of Ms. Winkler's Declaration or how Ms. Winkler concluded that "Scripps' last record of Plaintiff viewing any video content … was in August 2021," or that "[o]n March 17, 2022, Scripps removed the Meta Pixel from all HGTV.com video pages." Winkler Decl. ¶¶ 6, 8. If anything, it only serves to bolster Plaintiff's allegations that Defendant is tracking its website users' video viewing activity. Third, Defendant has taken inconsistent positions on its "internal records," casting doubt as to the reliability and search methodology of the same. *See* Declaration of Philip L. Fraietta (Fraietta Decl.) ¶¶ 3-4. For example "[o]n November 18, 2024 … counsel for Defendant … stat[ed] in relevant part: 'our client could not find any record of Ms. Simon as having signed up to receive the HGTV newsletter.'" *Id.* ¶ 3. Defendant reiterated the same on December 3, 2024. *Id.* ¶ 4 ("We could not locate the plaintiff from her email as someone who signed up and received the newsletter (at least from the current mailer)."). Now, Defendant claims the opposite, admitting Plaintiff was, in fact, a newsletter subscriber and confirming record that Plaintiff visited the website. *See* MTD at 7. It would therefore be inappropriate to blindly accept Defendant's say-so at this juncture. *See Lamb*, 2023 WL 6318033, at *9 ("because Plaintiffs' declarations reveal serious questions about Mr. Johnson's review of the supposed 'diligent searches' as described in his declaration, the Court resolves this factual dispute in Plaintiffs' favor"); *Sitt v. Nature's Bounty, Inc.*, 2016 WL 5372794, at *10 (E.D.N.Y. Sept. 26, 2016) ("Nevertheless, courts agree that issues of fact, credibility, and the weight of the evidence are not properly considered on a motion to dismiss.") (internal citation omitted).

At minimum, Plaintiff should be afforded discovery to confirm the accuracy of Defendant's assertions, such as the search process undertaken by Defendant and the reliability of Defendant's recordkeeping. Facts pertaining to the implementation of the invisible Facebook Tracking Pixel

are solely within the knowledge of Defendant. This case involves complex computer code that could not be reasonably discovered by the ordinary consumer. *See infra*, Section II. Thus, it would be improper to blindly accept conclusory statements in the Winkler Declaration that contradict statements made by Defendant's counsel.

## II. PLAINTIFF'S CLAIMS ARE TIMELY

Defendant argues that any disclosures prior to 2022 are "time barred under the VPPA's two-year statute of limitations." MTD at 8 (citation omitted). Specifically, Defendant argues that "Plaintiff's SAC is completely devoid of allegations supporting the application of any tolling doctrines, including the discovery rule[.]" MTD at 8 (citations omitted). Defendant is wrong.[2]

The VPPA states "[n]o action may be brought under this subsection unless such action is begun within 2 years from the date of the act complained of or the date of discovery." 18 U.S.C. § 2710(c)(3). And "equitable tolling is appropriate where, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim within the statute of limitations period." *Saint-Jean v. Emigrant Mortg. Co.*, 129 F.4th 124, 142 (2d Cir. 2025) (cleaned up). "While equitable tolling extends to circumstances outside both parties' control, the related

[2] Here too, Defendant recycles its 12(b)(1) argument claiming, "Scripps has no record of Plaintiff visiting the HGTV.com website since August 2021." MTD at 8. This argument should not be considered on a motion to dismiss, *supra*, Sec. I, nor is there any evidence Plaintiff was aware of Defendant's conduct in August 2021—which was over three years before the instant case was filed. *See United States ex rel. Daugherty v. Tiversa Holding Corp.*, 342 F. Supp. 3d 418, 425 n.1 (S.D.N.Y. 2018) ("[T]his distinction [between a Rule 12(b)(1) and Rule 12(b)(6) motion] is significant … First, a court may resolve factual disputes and consider extrinsic evidence when resolving a Rule 12(b)(1) motion, but *may not do so* when resolving a Rule 12(b)(6) motion unless the documents are incorporated in the pleading.") (emphasis added); *see also Murphy Med. Assocs., LLC v. Centene Corp.*, 2023 WL 2384143, at *9 (D. Conn. Mar. 6, 2023) ("The Defendants cannot circumvent the limitations for a 12(b)(6) motion by simply pointing to the potential consequence (no subject matter jurisdiction) and then applying the standards relevant to the conceivable consequence. This would in effect allow the Court to always apply the standard for 12(b)(1) motions because any claim that is dismissed could rid the court of subject matter jurisdiction.").

doctrines of equitable estoppel and fraudulent concealment may bar a defendant from enforcing a statute of limitation when its own deception prevented a reasonably diligent plaintiff from bringing a timely claim." *Id.* at 143 (citation omitted). "A plaintiff can prove concealment by showing … that the wrong itself was of such a nature as to be self-concealing." *Id.* (cleaned up); *see also In re State Police Litig.*, 888 F. Supp. 1235, 1250 (D. Conn. 1995) (rejecting defendants' statute of limitations argument, "since it is the nature of telephone recording to be self-concealing, … the fraudulent concealment doctrine also would render timely all of plaintiffs' claims."); *Ade v. Viki, Inc.*, 2024 WL 1880153, at *3 (N.D. Cal. Mar. 28, 2024) (holding defendant's "alleged use of the Pixel, 'an invisible tracking tool,'" tolls the statute of limitations, and "declin[ing] to dismiss any portion of the claims asserted as time-barred").

It is beyond question that Defendant's wrong was self-concealing. The crux of this lawsuit is that Defendant—using complex computer code—surreptitiously disclosed video-viewing data to a third party without Plaintiff's knowledge or consent. *See, e.g.*, SAC ¶¶ 12-35, 75. The Pixel is deliberately designed to operate without users' knowledge. SAC ¶ 10 ("Facebook can target users so effectively because it surveils user activity both on and off its site"). It therefore strains credulity for Defendant to presume that Plaintiff somehow had knowledge of Defendant's conduct in violating the VPPA in August 2021—<u>over three years before Plaintiff filed this lawsuit</u>—rendering its statute of limitations argument meritless. Plaintiff, like any other ordinary website user, had no way of reasonably knowing that her PII was intercepted and unlawfully disclosed to Facebook because Defendant did this without permission. SAC ¶ 75 ("Plaintiff and Class members did not provide Defendant with any form of consent—either written or otherwise—to disclose their PII to third parties."). Therefore, Plaintiff does, in fact, plead facts suggesting tolling is

appropriate.[3] For the Court to hold otherwise would violate black letter law that "the Court must 'construe [the SAC] liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor.'" *Singh v. Deloitte LLP*, 123 F.4th 88, 93 (2d Cir. 2024) (citing *Sacerdote v. New York Univ.*, 9 F.4th 95, 106-07 (2d Cir. 2021)).

Defendant's case law is unavailing. *See* MTD at 8-9 (citing *Ramiro Aviles v. S & P Glob., Inc.*, 380 F. Supp. 3d 221 (S.D.N.Y. 2019); *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.* ("*In re Bear*"), 995 F. Supp. 2d 291, 310 (S.D.N.Y. 2014), *aff'd sub nom. SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Companies L.L.C.*, 829 F.3d 173 (2d Cir. 2016)). In *Ramiro*, the plaintiffs were presented with "clear signs … of the very risks [plaintiffs] allege had not been disclosed" including but not limited to the fact that the fund "suspended redemptions" and "stopped sending annual reports to investors." *Id.* at 278-79. Here, Plaintiff had no "clear signs" nor could she have—her data was secretly collected by Defendant. *See* SAC ¶¶ 12-13 (the Facebook Tracking Pixel is a "piece of code" that "[a]dvertisters control" and collects "metadata"). *In re Bear* is similarly distinguishable, as it was a securities case where "a reasonably diligent plaintiff could have discovered the alleged fraud … when [defendant] nearly collapsed, or … the Class Action Lead Plaintiff added a federal securities fraud claim against [the other defendant]." Here, Plaintiff could not have discovered the surreptitious tracking through reasonable diligence as it requires analysis of complex computer code.

Next, Defendant contends that Plaintiff should have been "on notice" because a "hyperlink to the applicable Privacy Policy was available directly above the sign-up button. Plaintiff thus

[3] The applicability of tolling doctrines including but not limited to fraudulent concealment means that Plaintiff need not "plead that *Carter* tolls her claims[.]" MTD at 10. If required, Plaintiff can easily amend to include that allegation.

knew or should have known based on an exercise of reasonable diligence that the HGTV.com website would collect and disclose certain user information." MTD at 9.

This argument fails out the gate because Defendant does not even proffer what the sign-up page looks like. Therefore, it is impossible for this Court to "look to the design and content of the relevant interface to determine if the contract terms were presented to the offeree in way that would put her on inquiry notice of such terms." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 289 (2d Cir. 2019) (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014)). Any such determination at this stage is premature and would require the Court to draw inferences against Plaintiff. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009) ("We consider the legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor.").

Moreover, Defendant's argument fails because any "hyperlinked" terms constitute unenforceable browsewrap. *See*, *e.g.*, *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 238 (2d Cir. 2016) ("Amazon has failed to show that [plaintiff] was on notice"); *Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, 999 F.3d 828, 830 (2d Cir. 2021) ("we hold that [plaintiff] was not on such notice"). It is also unclear whether the Privacy Policy even describes the conduct alleged in the SAC. At minimum, this presents an issue of fact not suitable for determination on the pleadings.

Defendant's cited case law does not warrant dismissal. *See* MTD at 9 (citing *Javier v. Assurance IQ, LLC*, 2023 WL 3933070, at *3 (N.D. Cal. June 9, 2023)). *Javier* concerned a "clickwrap" agreement where "by clicking 'View my Quote,' the user 'provide[s] [their] electronic signature as an indication of [their] intent to agree to this website's Privacy Policy [and] Terms of Service,'" which Defendant has not argued to be the case here, nor could it. *Id.*, at *2, *compare with* Winkler Decl. ¶ 4 (merely stating that "[]when Plaintiff Simon signed up, a hyperlink to the

HGTV.com Privacy Policy appeared above the sign-up button" without any documentation or depiction).

Defendant similarly argues that Plaintiff's claims are untimely because its Visitor Agreement—which is tucked at the very bottom of its website in tiny font—"provides that 'any dispute, claim or controversy arising out of or relating in any way to the service or your use of the service … must be commenced within one year of the relevant events." MTD at 10 n.6. Yet again, this is unenforceable browsewrap. "Before an internet or app user can be bound by contractual terms, there must be evidence that '(1) a reasonably prudent person would be on *inquiry* notice of the terms, and (2) the user unambiguously manifests assent through ... conduct that a reasonable person would understand to constitute assent.'" *Vincent v. Nat'l Debt Relief LLC*, 2024 WL 3344227, at *6 (S.D.N.Y. July 8, 2024) (quoting *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 703 (2d Cir. 2023). Neither exists here because, as with its Privacy Policy, Defendant offers no indication that its Visitor Agreement was ever presented to Plaintiff, let alone mutually agreed upon. *See Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 403 (E.D.N.Y 2015) ("For an internet browsewrap contract to be binding, consumers must have reasonable notice of a company's 'terms of use' and exhibit 'unambiguous assent' to those terms."); *Hines v. Overstock.com, Inc.*, 668 F. Supp. 2d 362, 368 (E.D.N.Y 2009), *aff'd*, 380 F. App'x 22 (2d Cir. 2010) (declining to enforce browsewrap agreement where user "could not even see the link to [the terms and conditions] without scrolling down to the bottom of the screen—an action that was not required to effectuate her purchase").

Of note, the Ninth Circuit held in a similar context that such language serving to shorten a statute of limitations period was "egregious[]" and "unconscionable" because it "deprives [plaintiff] of the availability of the 'discovery rule.'" *See Ronderos v. USF Reddaway, Inc.*, 114

F.4th 1080, 1094-96 (9th Cir. 2024) ("Most egregiously, the filing provision effectively imposes the one-year statute of limitations on only Ronderos's claims. … the one-year statute of limitations starts to run when Ronderos's 'claim arose'—not when Ronderos knew or reasonably should have known about the claim. This means that the filing provision also deprives Ronderos of the availability of the 'discovery rule.' … To make things worse, the filing provision is one-sided: *only* Ronderos must comply with the notice requirements and one-year statute of limitations or else waive his claims.); *id.* at 1096 ("In sum, the filing provision's one-sided notice requirements and one-year statute of limitations severely restrict Ronderos's ability to vindicate his employment rights and, therefore, are substantively unconscionable.").[4]

*Newmont Mining Corp. v. AngloGold Ashanti Ltd.*, 344 F. Supp. 3d 724, 748 (S.D.N.Y. 2018) and *Wilson v. Triller, Inc.*, 598 F. Supp. 3d 82, 87 (S.D.N.Y. 2022) are of no help to Defendant. *See* MTD at 10 n.6. *Newmont Mining Corp.* concerned a multi-million dollar stock purchase agreement where the signatory negotiated the contract terms. 344 F. Supp. 3d at 730. Here, Plaintiff is a consumer who was unaware of nor assented to any terms. And in *Wilson*, the terms of use "appear[ed] directly below the buttons for registration … there is a warning that by creating an account with the respective platform, the user is agreeing to its respective terms; and the entire screen was visible at once, without there being a need to scroll beyond the page to find the terms." *Id.* None of those facts are present here.

Finally, Plaintiff's claims are nonetheless timely even if she somehow learned of Defendant's conduct at the earliest possible opportunity. Even assuming *arguendo* Plaintiff Simon

---

[4] Additionally, Defendant has not proffered a version of the Visitor Agreement from the relevant time period. While Defendant only cites language from the January 2023 Agreement (*see* MTD at 10 n.6), the 2023 language is not determinative because Plaintiff watched videos "[r]outinely throughout 2018, 2019, 2020, 2021, and 2022." SAC ¶ 52.

discovered Defendant's surreptitious interception of video-viewing information when *Carter v. Scripps Networks, LLC*, Case 1:22-cv-02031 (S.D.N.Y.) was first filed in March 2022, the statute of limitations period was tolled for the pendency of *Carter* pursuant to *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974)—by thirteen months—until *Carter* was dismissed in April 2023. Therefore, at minimum, Plaintiff Simon had two years from April 2023—until April 2025—to file the instant lawsuit. This lawsuit is timely because it was filed in October 2024. Defendant's unsupported assertion that the statute of limitations began running on the last instance it admits to intercepting Plaintiff's video viewing behavior would require the Court to draw inferences against Plaintiff, and is therefore an inappropriate basis for dismissal.

## III. PLAINTIFF SUFFICIENTLY PLEADS A VPPA CLAIM

Defendant's remaining arguments are either belied by the SAC or require the Court to draw inferences against Plaintiff. "When considering a motion to dismiss a complaint under Rule 12, the Court must 'accept[ ] all of the complaint's factual allegations as true and draw[ ] all reasonable inferences in the plaintiff's favor.'" *Czarnionka v. Epoch Times Ass'n, Inc.*, 2022 WL 17069810, at *2 (S.D.N.Y. Nov. 17, 2022) (holding plaintiff plausibly alleged a VPPA violation) (quoting *In re Gen. Elec. Sec. Litig.*, 844 F. App'x 385, 387 (2d Cir. 2021)).

### A. Plaintiff Sufficiently Alleges Defendant Disclosed Plaintiff's PII And Did So Knowingly

#### *1. Defendant Disclosed Plaintiff's PII*

First, Defendant argues that "Plaintiff has crucially never specifically alleged that she was logged into Facebook while she watched videos," "has made no allegation that she did not clear cookies or that she refrained from using a browser that automatically blocks cookies," MTD at 11, and that she "failed to plausibly allege that any information was transmitted that identified her via

the c_user cookie." MTD at 12. But none of this is required. To the contrary, Plaintiff alleges conditions sufficient for disclosure.

Specifically, Plaintiff alleges that "[w]hen Plaintiff first subscribed, she entered her email address. Defendant then disclosed this identifier [i.e., Plaintiff's email] to Facebook, along with her Facebook ID and other identifying information, like identifiers for her browser. When Plaintiff watched videos on hgtv.com, Defendant disclosed event data to Facebook, knowing Facebook would combine that data with the identifiers. By doing so, HGTV disclosed Plaintiff's PII to a third-party." SAC ¶¶ 53-54. "The Court must credit these pleadings at this pre-discovery stage." *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 162 (S.D.N.Y. 2023) ("Accordingly, the FAC adequately alleges that [defendant] knowingly disclosed PII within the meaning of the VPPA."); *see also Lamb v. Forbes Media LLC*, 2023 WL 6318033, at *10 (S.D.N.Y. Sept. 28, 2023) ("'Courts have uniformly held Facebook IDs to constitute PII under the VPPA, particularly where—as here— the plaintiff alleges that her Facebook ID was disclosed alongside the viewed video's URL and name.'") (quoting *Golden*, 688 F. Supp. 3d at 159).

Defendant claims "Plaintiff has not pled at all how the encrypted Facebook IDs and browser identifiers allegedly transmitted could be used by an ordinary person … to identify any specific user or link the user to their watch history." MTD at 13 (citations omitted). But this argument was squarely rejected by Judge Swain in *Aldana v. GameStop, Inc.*, 2024 WL 708589 (S.D.N.Y. Feb. 21, 2024), *motion to certify appeal denied*, 2024 WL 3104345 (S.D.N.Y. June 24, 2024):

> This argument seeks to obscure the significance of Plaintiffs' allegations that Facebook is the third-party that received customer information from gamestop.com, <u>and</u> Facebook is able to decipher the cookies generated by the Facebook Tracking Pixel. Courts across the country—including in this district—have indicated that

> providing a third party with PII that is legible to that specific third party is sufficient to state a claim under the VPPA.

*Id.*, at *8 (emphasis in original); *see also Robinson v. Disney Online*, 152 F. Supp. 3d 176, 182-83 (S.D.N.Y. 2015) ("[Defendant] could not disclose the information at issue here, along with a code that enabled [the relevant third party] to decrypt the hashed serial number and other information necessary to determine the specific device's user, and still evade liability."); *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1097 (N.D. Cal. 2015) ("No one would deny that I would violate the VPPA by passing someone an encrypted list of Judge Bork's video rentals—if my recipient and I both understood that we would use a mutually intelligible code.").

Defendant next argues that "[t]he other cookies the SAC discusses—which contain encrypted Facebook IDs and browser identifiers—do not constitute PII under the VPPA." MTD at 13 (citing *Bernardino v. Barnes & Noble Booksellers, Inc.*, 2017 WL 3727230, at *8-9 (S.D.N.Y. Aug. 11, 2017)). This argument was also rejected by Judge Swain:

> To support this argument, [defendant] points to one decision in this District that denied a plaintiff's preliminary injunction motion and noted that Facebook's "fr" cookie was not clearly PII under the VPPA. *See Bernardino*, 2017 WL 3727230, at *9 (S.D.N.Y. Aug. 11, 2017) … However, that decision is of limited relevance here because it made clear "[the] task on the present motion is not to decide the issue of whether the information conveyed is PII."

*Aldana*, 2024 WL 708589, at *8 n. 7 (quoting *Bernardino*, 2017 WL 3727230, at *9) (finding "cookies disclosed to Facebook constitute PII").[5]

[5] Defendant erroneously misquotes the SAC when it argues, "Plaintiff simply alleges (without more) that by disclosing 'browser identifiers alongside event data for videos, HGTV discloses information sufficiently permitting an ordinary person to identify a specific individual's video viewing behavior." MTD at 14 (citing SAC ¶ 48). The full quote is: "By compelling a visitor's browser to disclose the fr cookie *and* other browser identifiers …" SAC ¶ 48 (emphasis added).

Citing *Solomon v. Flipps Media, Inc.*, 2023 WL 6390055 (E.D.N.Y. Sept. 30, 2023) and *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714 (N.D. Cal. 2023), Defendant claims that "[c]ourts analyzing similar issues, including in the Second Circuit, have found that the transmission of a Facebook ID by itself does not constitute PII." MTD at 12. But Judge Liman disposed of this argument in *Lee*, along with the defendant's reliance on *Solomon* and *Ghanaat. See Lee v. Springer Nature Am., Inc.*, 2025 WL 692152, at *16 (S.D.N.Y. Mar. 4, 2025) (Liman, J.) ("[T]his argument misunderstands the meaning of PII and its categorical nature. … [A] Facebook ID is a type of information which qualifies as PII because it is capable of identifying an individual. It is PII regardless whether it contains a name or particular identifying information, and there is no need to wade into the murky issue of exactly how "identifiable" a particular profile might be. The violation occurs upon the disclosure of the Facebook ID itself.") (citing *Czarnionka*, 2022 WL 17069810, at *4).

Defendant argues further that an ordinary person cannot identify a specific user and that "'information which is not otherwise PII [cannot] somehow become PII because of the potential … of a third party to 'reverse engineer' a disclosure using data gathered from other sources.'" *See* MTD at 13-14 (quoting *Robinson*, 152 F. Supp. 3d at 183); *see also id.* (citing *Wilson v. Triller, Inc.*, 598 F. Supp. 3d 82, 91 (S.D.N.Y. 2022); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. 474, 500 (S.D.N.Y. 2022)). All these cases fail to persuade.

First, the *Robinson* court merely refers to an "anonymized Roku serial number at issue" which number "identifies a specific device, and nothing more." *Id.* at 184. But here, at issue is a Facebook ID that identifies a *person*—not a "device, and nothing more." SAC ¶ 33 ("Anyone can identify a Facebook profile—and all personal information publicly listed on that profile—by appending the Facebook ID to the end of Facebook.com.").

*Wilson* is similarly inapposite. There, the plaintiff argued that a "user identification number [UID]" untethered to any third-party was PII. *See* 598 F. Supp. 3d at 92 ("[T]he third party must 'pair' the UID with information from a user's Triller [the defendant's] profile page … the complaint lacks any allegation that would allow the Court to infer a 'firm and readily foreseeable' connection between the information disclosed and Wilson's identify[.]"). To the contrary, here, Plaintiff alleges a firm and foreseeable connection between a Facebook ID ("FID") and a user's Facebook profile page. *See* SAC ¶ 8 ("Facebook is the largest social networking site … Facebook describes itself as a 'real identify platform,' meaning users are allowed only one account and must share 'the name they go by in everyday life.'"); *see also id.* ¶¶ 24-54 (detailing the process by which Defendant transmits FIDs to Facebook).

Finally, *Keurig* lends Defendant no support because the PII is decipherable to third party Facebook. The SAC makes this clear. Even though data may be "encrypted" or "unencrypted" in particular instances, depending whether "a visitor watches a video on hgtv.com while logged into Facebook," "has recently logged out of Facebook," or "has never created a Facebook account" (SAC ¶¶ 24, 25, 27), <u>in all instances</u> Plaintiff alleges that Facebook can nonetheless identify users. *See*, *e.g.*, SAC ¶ 32 ("Facebook, at a minimum, uses the fr, _fbp, and c_user cookies to link Facebook IDs and corresponding Facebook profiles."). For this same reason, Defendant presents a red herring by arguing that "the fr cookie is 're-encrypted every hour to a different value[,]'" MTD at 14 n.9 (citation omitted), and "Plaintiff has crucially never specifically alleged that she was logged into Facebook while she watched videos." MTD at 11. That is not necessary to state a claim.

*2. Defendant Disclosed Plaintiff's PII Knowingly*

Defendant argues "Plaintiff still has not sufficiently alleged that Scripps *knowingly* disclosed any information that 'identifies a person as having requested or obtained specific video materials[.]'" MTD at 16 (citing 18 U.S.C. §§ 2710(a)(3), 2710(b)(1)). Not so.

Plaintiff alleges that "[b]y compelling a visitor's browser to disclose the Advanced Matching parameters alongside event data for videos, HGTV knowingly discloses information sufficiently permitting an ordinary person to identify a specific individual's video viewing behavior." SAC ¶ 45. Moreover, the code for the Pixel did not magically appear on Defendant's website. Rather, it "is a piece of code that advertisers, like Defendant, can integrate into their website." SAC ¶ 12.

Indeed, Defendant's argument has been routinely disagreed with by courts in this District and throughout the country. *See Lee*, 2025 WL 692152, at *17 ("Plaintiff has alleged that Defendant knowingly installed the pixel, knowing that it would transmit his personal information to Facebook. … The fact that the information is provided through a tool, rather than directly, does not make the disclosure any less knowing."); *Czarnionka v. Epoch Times Ass'n, Inc.*, 2022 WL 17069810, at *4 (S.D.N.Y. Nov. 17, 2022), *motion to certify appeal denied*, 2022 WL 17718689 (S.D.N.Y. Dec. 15, 2022) ("Plaintiff has plausibly alleged that the FID itself constituted PII. Knowledge of what Facebook might do with the disclosed information to yield PII is therefore unnecessary. Accordingly, I find that Plaintiff has plausible alleged 'knowing' disclosure."); *accord Aldana*, 2024 WL 708589, at *9; *Lamb*, 2023 WL 6318033, at *11 ("Here, the SAC alleges that Forbes discloses a subscriber's email address, first name, last name, SAC ¶ 40, and that 'Forbes knows that Facebook will match the Advanced Matching parameters with a subscriber's subsequent activity, thereby helping Forbes '[i]ncrease the number of attributed conversions,'

'[i]ncrease [its] Custom Audience size,' and '[d]ecrease the cost per conversion.' SAC ¶ 41. Additionally, the SAC alleges that Forbes integrated or installed the Facebook Tracking Pixel into its website, *id.* ¶¶ 12, 18, and that it chose to activate the optional 'Advanced Matching' tool, *id.* ¶¶ 35–36. This is sufficient to allege Forbes acted 'knowingly.'"); *Harris v. Pub. Broad. Serv.*, 662 F. Supp. 3d 1327, 1337 (N.D. Ga. 2023) ("Plaintiff alleges Defendant installed the pixel for the specific purpose of transmitting personal viewing information whenever possible and in an automated manner. No more precise knowledge is required under the statute."); *Belozerov v. Gannett Co.*, 646 F. Supp. 3d 310, 2022 WL 17832185, at *4-5 (D. Mass. Dec. 20, 2022) (same).

In a last-ditch effort, Defendant claims that "[c]ases such as [*Czarnionka*] and [*Aldana*] do not establish otherwise, as the court there did not dispute that the c_user cookie is Meta's cookie, or that Meta deposits the cookie on the users' browsers." MTD at 16 n.11. This is not true. *Czarnionka* considered and rejected the defendant's argument that the "article cited … in the Complaint states that *Facebook*, not [d]efendant, places a 'c_user' cookie[.]" 2022 WL 17069810, at *3 (emphasis added). The *Czarnionka* court noted that "[a]t the motion to dismiss stage, the Court must "accept[ ] all of the complaint's factual allegations as true and draw[ ] all reasonable inferences in the plaintiff's favor." *Id.*, at *3 (cleaned up); *see also id.* ("By installing the Pixel, Defendant opened a digital door and invited Facebook to enter that door and extract information from within.") (citation omitted).

Here, "Plaintiff alleges throughout the [SAC] that Defendant *itself* discloses subscriber information by installing and maintaining the Pixel on its website." *Czarnionka*, 2022 WL 17069810, at *3 (emphasis added); SAC ¶ 12 ("The Facebook Tracking Pixel is a piece of code that advertisers, like Defendant, can integrate into their website.") *id.* ¶ 24 ("HGTV compels a visitor's browser to transmit the c_user cookie to Facebook"); *id.* ¶ 14 ("Advertisers control how

the Facebook Tracking Pixel identifies visitors. … Pixel-specific Data includes 'the Pixel ID and cookie.'"). Finally, the court in *Lee v. Springer Nature Am., Inc.* rejected a similar argument:

> Defendant argues …. It was the Pixel—not Defendant—that disclosed his PII[] … [this] second argument was cogently rejected by Judge Hellerstein in [*Czarnionka*] … Defendant has offered no reason for the Court to depart from those rulings.

2025 WL 692152, at *17.

Defendant offers no basis to depart from these rulings. Nor could it. After all, "[i]t cannot be argued that the tool, not the agent who installed it, is liable for the disclosure." *Id.* Even if a shadow of doubt remained, Plaintiff's claim should nonetheless survive dismissal because "it is impracticable before discovery to require [Plaintiffs] to plead adequately" all of Defendant's internal knowledge of information collected and shared "because Defendant is in sole possession of [these] facts." *Belyakov v. We Are Constantly Thinking, Designing, & Eating LLC*, 2021 WL 3788963, at *2 (S.D.N.Y. Aug. 26, 2021) (quoting *Energy Intelligence Grp., Inc. v. Jefferies, LLC*, 101 F. Supp. 3d 332, 339 (S.D.N.Y. 2015); *see also Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (plaintiffs may plead upon information and belief "where the facts are peculiarly within the possession and control of the defendant"). This is particularly true with regard to allegations concerning "knowledge," which "may be alleged generally." Fed. R. Civ. P. 9(b). At a minimum, therefore, Plaintiff's allegations are sufficient to proceed beyond the pleading stage and into discovery.

### B. Plaintiff Need Not Allege The Newsletter Contained The Pixel

Defendant contends that Plaintiff "fails to allege the Newsletter itself contains the Pixel" and that "she cannot make any independent claim arising from her subscription to the Newsletter." MTD at 17. This argument is flawed for several reasons.

First, Defendant's argument is foreclosed by the Second Circuit's decision in *Salazar*. *See* 118 F.4th at 550, 553 (holding plaintiff adequately alleged he was a subscriber under the VPPA where plaintiff gave defendant "personal information in exchange for access to [defendant's] online newsletter" which newsletter was found to be a "qualifying good or service"); *accord Gardner v. Me-TV Nat'l Ltd. P'ship*, 132 F.4th 1022, 1025 (7th Cir. 2025) ("Any purchase or subscription from a 'video tape service provider' satisfies the definition of 'consumer', even if the thing purchased is clothing or the thing subscribed to is a newsletter.").

Indeed, Plaintiff makes virtually identical allegations as the plaintiff in *Salazar*. *Compare Salazar*, 118 F.4th at 538 (plaintiff's VPPA claim "rest[ed] on three primary allegations: (1) he has a Facebook account; (2) he signed up for the NBA's online newsletter; and (3) he watched NBA.com videos while logged into his Facebook account.") *with* SAC ¶¶ 51-54. Plaintiff's allegations are therefore sufficient under binding Second Circuit precedent. Nothing further is required.

Second, even in the absence of *Salazar*'s binding authority, Defendant's newsletter cannot be said to be "unrelated" to Plaintiff's video viewing. MTD at 17 n. 12. The SAC establishes "[t]he overwhelming amount of content featured in the newsletter links back to … videos on hgtv.com." SAC ¶ 43. Moreover, in exchange for Plaintiff to receive Defendant's newsletters, Plaintiff was required to "input an email address." SAC ¶ 38. Such consideration has long been central to determining subscriber status. Relying on this principle, the Court of Appeals for the First Circuit reached the same conclusion as *Salazar* nearly a decade earlier. *See Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482 (1st Cir. 2016) (holding that the plaintiff was a subscriber because they provided "consideration in the form of" "personal information" to use an app); *accord Lee*, 2025 WL 692152, at *9 ("A person becomes a VPPA

subscriber by providing consideration in the form of personal information in exchange for a good or service."); *Berryman v. Reading Int'l, Inc.*, 2025 WL 315403, at *4 (S.D.N.Y. Jan. 28, 2025) ("[plaintiff] … provided [defendant] with personal information in exchange for access to the website's newsletter and online video content.").

## CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied in its entirety. Should the Court grant Defendant's Motion in any part, Plaintiffs respectfully request leave to amend, which "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).

Dated: April 24, 2025

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Philip L. Fraietta*
Philip L. Fraietta

Philip L. Fraietta
Alec M. Leslie
1330 Avenue of the Americas
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
E-Mail: pfraietta@bursor.com
aleslie@bursor.com

*Attorneys for Plaintiff*

## CERTIFICATE OF COMPLIANCE

The foregoing Memorandum of Law in Opposition to Motion to Dismiss contains 7,286 words, excluding the portions exempted by Local Civil Rule 7.1(c). This Memorandum complies with the word-count limitations under Local Rule 7.1 because the word count does not exceed the 8,750 words permitted under the Rules.

By: *___/s/ Philip L. Fraietta__*
Philip L. Fraietta

**CERTIFICATE OF SERVICE**

This is to certify that on April 24, 2025, I electronically filed the foregoing with the Clerk of the Court via the Court's CM/ECF electronic service system, which will send notification of such filing to all counsel of record.

By: *__/s/ Philip L. Fraietta__*
Philip L. Fraietta