UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CONSTANCE SIMON, individually and on
behalf of all others similarly situated,

                              Plaintiff,

                                                              24-cv-8175 (PKC)

                -against-                                     OPINION AND ORDER


SCRIPPS NETWORKS, LLC,

                              Defendant.
------------------------------------------------------------x

CASTEL, U.S.D.J.

   In this putative class action, plaintiff Constance Simon alleges that defendant

Scripps Networks, LLC ("HGTV") collected and disclosed her identifying information and

video-watching activity on the HGTV website to third-party Facebook.  Simon asserts that the

disclosure of that information to Facebook violated the Video Privacy Protection Act of 1988, 18

U.S.C. § 2710(b)(1) (the "VPPA").  HGTV moves to dismiss the Second Amended Class Action

Complaint (the "Complaint") pursuant to Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P.

   For the reasons set forth below, the Court concludes that the Complaint

sufficiently alleges that Simon suffered an actual and particularized injury, and therefore Simon

has Article III standing to bring her claim.  Accordingly, HGTV's Rule 12(b)(1) motion will be

denied.  However, because the Complaint does not plausibly allege that HGTV disclosed

Simon's personally identifiable information to Facebook, HGTV's Rule 12(b)(6) motion to

dismiss will be granted.

BACKGROUND.

Defendant HGTV owns and operates hgtv.com, a website that hosts hundreds of videos featuring "home and lifestyle content." (Compl't ¶¶ 2, 15.) To drive web traffic to hgtv.com, HGTV produces several newsletters that contain links to articles and videos located on the website. (Id. ¶¶ 42–43.) Visitors to hgtv.com who want to subscribe to HGTV's newsletters must enter their email address on the HGTV website. (Id. ¶ 38.)

HGTV integrated the Facebook Tracking Pixel (the "Pixel"), a string of computer code created by the social-networking site Facebook, into hgtv.com. (Id. ¶¶ 8, 12, 16.) Advertisers use the Pixel to automatically send information about actions taken by website visitors to Facebook. (Id. ¶¶ 11–12.) Facebook compiles this information into detailed datasets, which advertisers like HGTV can then use to better target their advertisements to existing customers or users who share similar characteristics with existing customers. (Id. ¶¶ 10–11, 36.)

The version of the Pixel embedded in hgtv.com sent several types of information to Facebook when users viewed videos on the site, including the video's title and URL. (Id. ¶¶ 17–20, 23.) Furthermore, when a visitor to hgtv.com was logged into a Facebook account, the visitor's browser transmitted a "c_user" cookie to Facebook, which contained the visitor's unencrypted Facebook ID.[1] (Id. ¶ 24.) If the visitor recently logged out of their Facebook account, the Pixel sent a "fr" cookie to Facebook that contained the user's encrypted Facebook ID. (Id. ¶¶ 25–26.) The Pixel also sent Facebook information about the visitor's browser via the "fr" and "_fbp" cookies. (Id. ¶¶ 24–28.) Finally, the hgtv.com Pixel used "Automatic Advanced Matching" to detect other sources of information on the website, including the email addresses of users who subscribed to HGTV's newsletters. (Id. ¶¶ 35–39.) The information collected by the

---

[1] A Facebook ID is an identifier that can be used to locate a specific Facebook social network profile by appending the Facebook ID to the end of the Facebook.com URL. (Compl't ¶ 33.)

Automatic Advanced Matching feature is "hashed," meaning that it is converted into a "computed summary of digital data" that "cannot be reversed back into the original data." (Id. ¶ 35.) According to the Complaint, Facebook uses the information received from the Pixel to determine which specific videos users have watched on hgtv.com. (Id. ¶ 34.)

Simon has a Facebook account and claims she has been subscribed to an HGTV newsletter since 2018. (Id. ¶¶ 51–52.) She also asserts that she routinely watched videos on hgtv.com from 2018 to 2022. (Id. ¶ 52.) Simon alleges that the Pixel disclosed her Facebook ID, browser identifier, email address and information about the videos she viewed on hgtv.com to Facebook. (Id. ¶¶ 52–54.)

Simon's Complaint brings one claim under the VPPA, alleging that HGTV knowingly disclosed her personally identifiable information to Facebook without her consent. (Id. ¶¶ 72, 74–75.) The Complaint seeks statutory damages and injunctive and declaratory relief. (Id. ¶ 77.) As noted, HGTV filed a motion to dismiss the Complaint for lack of standing under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6).

SIMON HAS ARTICLE III STANDING.

HGTV first argues in its motion that Simon lacks Article III standing "for any claims from 2022" because Simon's personally identifiable information could not have been transmitted to Facebook in 2022. (ECF 30.) In support of its Rule 12(b)(1) motion, HGTV submitted a declaration (the "Winkler Declaration") from Katharina Winkler, Director of "Legal, Privacy and Data Strategy for Warner Bros. Discovery, Inc." (ECF 31.) In her declaration, Ms. Winkler asserts that she reviewed HGTV's business records and determined that (1) HGTV's last record of Simon viewing any video content on hgtv.com was from August 2021, (2) Simon

unsubscribed from the HGTV newsletter in January 2022, and (3) HGTV removed the Pixel from all hgtv.com video pages in March 2022.  (Id.)  Accordingly, HGTV asserts that Simon could not have suffered any injury in 2022 and therefore "lacks standing to bring a claim for any alleged disclosures occurring in that year."  (ECF 30.)  In her opposition to the motion to dismiss (ECF 32), Simon did not submit any evidence to controvert the statements made in the Winkler Declaration.  Instead, Simon attacks the propriety of HGTV's submission of the declaration and the credibility of the statements made therein.

 "Standing is the threshold question in every federal case, determining the power of the court to entertain the suit."  Ross v. Bank of Am., N.A. (USA), 524 F.3d 217, 222 (2d Cir. 2008) (internal quotation marks omitted) (quoting Denney v. Deutsche Bank AG, 443 F.3d 253, 263 (2d Cir. 2006)).  Because it is a "jurisdictional requirement," standing "must be assessed before reaching the merits."  Calcano v. Swarovski N. Am. Ltd., 36 F.4th 68, 74 (2d Cir. 2022) (internal quotation marks omitted) (quoting Byrd v. United States, 584 U.S. 395, 410–11 (2018)).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

 To have standing to bring suit, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016).  As to the injury-in-fact requirement, the injury must be "concrete, particularized, and actual or imminent."  TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021).  A concrete injury is one that is "real, and not abstract."  Spokeo, 578 U.S. at 340 (internal quotation marks

omitted).[2]  An injury is "particularized" if it "affect[s] the plaintiff in a personal and individual way." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 n.1 (1992).  To be "actual or imminent," the injury must have "actually happened" or be "certainly impending."  Soule v. Connecticut Ass'n of Schs., Inc., 90 F.4th 34, 46 (2d Cir. 2023) (quoting Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013)).  HGTV's Rule 12(b)(1) motion specifically challenges Simon's ability to satisfy the "particularized" and "actual or imminent" components of the injury-in-fact requirement.  (See ECF 34.)

"The burden rests on the party asserting jurisdiction to clearly allege facts demonstrating standing." Ross, 524 F.3d at 222.  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." Lujan, 504 U.S. at 561 (cleaned up).  In the context of a Rule 12(b)(1) motion, "the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014).

In resolving a motion under Rule 12(b)(1), "a district court may consider evidence outside the pleadings." Morrison v. Nat'l Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008).  When a defendant challenges standing using evidence outside the complaint that "reveal[s] the existence of factual problems in the assertion of jurisdiction," then "the plaintiff[] will need to come forward with evidence of [her] own to controvert that presented by the defendant." Carter

---

[2] The alleged disclosure of personal information to a third party is sufficient to satisfy the concreteness requirement. See Salazar v. Nat'l Basketball Ass'n, 118 F.4th 533, 542 (2d Cir. 2024) (alleged injury from disclosure of personal information to Facebook via the Pixel in violation of the VPPA was analogous to that traditionally recognized by the tort of public disclosure of private facts and therefore satisfied the concreteness requirement).

v. HealthPort Techs., LLC, 822 F.3d 47, 57 (2d Cir. 2016) (internal quotation marks omitted) (quoting Exchange National Bank of Chicago v. Touche Ross & Co., 544 F.2d 1126, 1131 (2d Cir.1976)).  "If the extrinsic evidence presented by the defendant is material and controverted, the district court will need to make findings of fact in aid of its decision as to standing."  Id.  As the party asserting subject matter jurisdiction, the plaintiff "has the burden of proving by a preponderance of the evidence that it exists."  Tandon, 752 F.3d at 243 (quoting Makarova, 201 F.3d at 113).  A plaintiff, however, is "entitled to rely on the allegations in the Pleading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing."  Carter, 822 F.3d at 57.

The Court may consider the Winkler Declaration in deciding HGTV's Rule 12(b)(1) motion.  See Exchange National Bank of Chicago, 544 F.2d at 1131 (noting the "long-standing rule that . . . evidentiary matter presented by affidavit . . . is proper where jurisdiction is challenged" in a Rule 12(b)(1) motion (internal quotation marks omitted)).  Simon has not presented any evidence controverting the assertions made in the Winkler Declaration.  Accordingly, the Court must determine whether those uncontroverted assertions are material to standing, i.e., they "reveal the existence of factual problems in the assertion of jurisdiction."  Carter, 822 F.3d at 57 (internal quotation marks omitted) (quoting Exchange National Bank of Chicago, 544 F.2d at 1131).  If they are material, then Simon has failed to meet her burden of establishing standing.  See In re Express Scripts/Anthem ERISA Litig., 285 F. Supp. 3d 655, 673 (S.D.N.Y. 2018) (Ramos, J.) ("Because Plaintiffs did not offer evidence to controvert [the defendant's] sworn declaration and it is Plaintiffs' burden to establish standing by a preponderance of the evidence, [the defendant]'s motion to dismiss . . . is granted.").  If the evidence is not material, however, then the Court may properly rely on the pleadings in

determining whether standing exists.  See Ham v. Lenovo (United States) Inc., 664 F. Supp. 3d 562, 576–77 (S.D.N.Y. 2023) (Carter, J.) (finding that "the Plaintiff is entitled to rely on the allegations of the Complaint in opposition to the motion to dismiss for lack of standing" because the declaration submitted by the defendant did "not reveal the existence of a factual problem in the assertion of jurisdiction" and therefore was "immaterial").

As discussed above, the Winkler Declaration states that Simon did not access any video content on hgtv.com after August 2021 and that she unsubscribed from the newsletter in January 2022.  The Winkler Declaration also states that HGTV removed the Pixel from video pages on its website in March 2022.  HGTV argues that Simon could not have suffered her alleged injury—the disclosure of her identifying information and video-watching data to Facebook—in 2022 and thus has no standing to bring a claim based on HGTV's alleged VPPA violations during that year.  (ECF 30.)  Notably, HGTV does not contest that Simon has standing to bring her claim as to any disclosures that occurred from 2018 through 2021.  (See Compl't ¶ 52.)

The Court is unconvinced by HGTV's challenge to Simon's standing.  Although "standing is not dispensed in gross," Lewis v. Casey, 518 U.S. 343, 358 n.6 (1996), Simon is not required to plead that she was injured by every conceivable violation of law encompassed by her claim.  Standing is analyzed on a claim-by-claim basis, not a violation-by-violation or year-by-year basis.  See In re LIBOR-Based Fin. Instruments Antitrust Litig., 299 F. Supp. 3d 430, 585 (S.D.N.Y. 2018) (Buchwald, J.) ("The Article III inquiry asks whether plaintiffs have suffered an injury-in-fact traceable to defendants' challenged behavior, not whether they have suffered a specific form of injury-in-fact."); Point12 Diversified Fund, LP v. TMC The Metals Co., 21-cv-5991 (EK)(PK), 2025 WL 1920340, at *9 (E.D.N.Y. July 11, 2025) ("Article III standing is

assessed on a claim-by-claim, not fact-by-fact, basis."); <u>San Francisco Baykeeper v. City of Sunnyvale</u>, 20-cv-00824 (EJD), 2025 WL 1616643, at *12 (N.D. Cal. June 6, 2025) ("The Court is aware of no precedent . . . that requires standing analysis to be conducted on a violation-by-violation basis when each violation is part of the same claim. And the Court doubts that such an analysis is required."); <u>see also</u> <u>DaimlerChrysler Corp. v. Cuno</u>, 547 U.S. 332, 352 (2006) ("[O]ur standing cases confirm that a plaintiff must demonstrate standing for <u>each</u> <u>claim</u> he seeks to press." (emphasis added)).  HGTV offers no support for the proposition that the Court may dismiss Simon's claim for lack of standing as to violations that occurred in 2022 while allowing that same claim to proceed as to violations from earlier time periods.

Indeed, in the cases cited by the parties in which courts found that the defendants' proffered evidence raised a material issue as to standing, the evidence, if true, suggested that it was impossible for the plaintiff to have suffered the alleged injury at all.  For instance, in <u>Lamb v. Forbes Media LLC</u>, 22-cv-06319 (ALC), 2023 WL 6318033 (S.D.N.Y. Sept. 28, 2023), another VPPA case, the plaintiffs, like Simon here, alleged that their personally identifiable information and video-watching history were disclosed by Facebook's Pixel.  2023 WL 6318033, at *1–2.  The defendant challenged the plaintiffs' Article III standing by submitting a declaration suggesting that the plaintiffs had never accessed any webpages on the defendant's site that contained specific video content.  <u>Id.</u> at *7.  Judge Carter found that this evidence was "material insofar that it contradicts Plaintiffs' allegations that they <u>ever</u> requested or obtained specific video materials, countering their allegation that their private information was disclosed in the first place."  <u>Id.</u> at *8 (emphasis added); <u>see also</u> <u>Dakus v. Koninklijke Luchtvaart Maatschappij, N.V.</u>, 22-cv-7962 (RA), 2023 WL 5935694, at *4 (S.D.N.Y. Sept. 12, 2023) (no standing for consumer fraud claims where defendant's evidence showed that plaintiff "could not

possibly have relied on any representations" made by the defendant (internal quotation marks omitted)). By contrast, the evidence submitted by HGTV suggests, at most, that Simon's information was not transmitted by the Pixel to Facebook after August 2021; it does not support a conclusion that her information was not disclosed at all.

The Winkler Declaration is thus not material to the issue of standing "because it does not contradict plausible allegations that are themselves sufficient to show standing." Carter, 822 F.3d at 57. Simon is therefore entitled to rely on her allegations in the Complaint. As mentioned, Simon has alleged that she has a Facebook account, enrolled in an HGTV newsletter, and watched videos on hgtv.com. (Compl't ¶¶ 51–52.) She also alleges that when she watched videos on hgtv.com, information about those videos and her identity were transmitted to Facebook by the Pixel. (Id. ¶¶ 52–54.)

The Court concludes that these allegations are sufficient at this stage to show that Simon incurred an injury in fact. See Salazar, 118 F.4th at 544 (alleged injury from transmission of personal information by Facebook Pixel was "particularized and actual"). HGTV's Rule 12(b)(1) motion to dismiss for lack of standing will therefore be denied.


SIMON HAS FAILED TO STATE A CLAIM UNDER THE VPPA.

HGTV next argues that Simon's Complaint fails to state a claim under the VPPA and therefore should be dismissed under Rule 12(b)(6). HGTV asserts that (1) Simon's claim is time-barred, (2) the Complaint does not allege that Simon was logged into Facebook when she viewed videos on hgtv.com, (3) the Complaint fails to plausibly allege that HGTV disclosed "personally identifiable information" to Facebook, (4) the Complaint fails to plausibly allege that HGTV "knowingly" transmitted such information and (5) the Complaint does not allege that the

newsletter contained the Pixel.  Because the Court agrees with HGTV's third argument that the Complaint failed to plausibly allege that HGTV disclosed Simon's personally identifiable information, the Court does not reach HGTV's other arguments.

I. Rule 12(b)(6) Standard.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A court assessing the sufficiency of a complaint must disregard legal labels or conclusions, which are not entitled to the presumption of the truth.  Iqbal, 556 U.S. at 678. Instead, the court must examine only the well-pleaded factual allegations, if any, "and then determine whether they plausibly give rise to an entitlement to relief."  Id. at 679.  "Dismissal under Rule 12(b)(6) is therefore appropriate only if 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'"  Michael Grecco Products, Inc. v. RADesign, Inc., 112 F.4th 144, 150 (2d Cir. 2024) (quoting Sewell v. Bernardin, 795 F.3d 337, 339 (2d Cir. 2015)).

When reviewing a motion to dismiss pursuant to Rule 12(b)(6), "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (quoting International Audiotext Network, Inc. v. American Telephone and Telegraph Co., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)).  "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint."  Id. at 153 (quoting International Audiotext, 62 F.3d at 72).  In addition, the Court may consider "matters of which judicial notice may be taken."  Id. (quoting Brass v. American Film

Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993)).  In reviewing a Rule 12(b)(6) motion, the

Court assumes all factual allegations in the complaint to be true and draws all reasonable

inferences in favor of the non-moving party.  Peretti v. Authentic Brands Group LLC, 33 F.4th

131, 137 (2d Cir. 2022).

> II.  The Complaint Does Not Plausibly Allege that HGTV Disclosed Personally
> Identifiable Information to Facebook.

The VPPA states that "[a] video tape service provider who knowingly discloses,

to any person, personally identifiable information concerning any consumer of such provider

shall be liable to the aggrieved person . . . ."  18 U.S.C. § 2710(b)(1).  Accordingly, to state a

claim under the VPPA, "a plaintiff must plausibly allege that (1) a video tape service provider

(2) knowingly disclosed to any person (3) personally identifiable information concerning her use

of the service."  Solomon v. Flipps Media, Inc., 136 F.4th 41, 44 (2d Cir. 2025).  Most relevant

here, the VPPA defines "personally identifiable information" to include "information which

identifies a person as having requested or obtained specific video materials or services from a

video tape service provider."  18 U.S.C. § 2710(a)(3).

HGTV argues that the Complaint should be dismissed because Simon does not

adequately allege that her Facebook ID and browser identifier were "personally identifiable

information" as that term is defined under the VPPA.  Furthermore, HGTV argues that the

Complaint fails to specify how an "ordinary person" could use the information transmitted by the

Pixel to identify any specific user and link that user to the videos he or she viewed on hgtv.com.

Since HGTV filed its motion, the Second Circuit issued two decisions that

addressed whether information transmitted by Facebook's Pixel constitutes "personally

identifiable information" under the VPPA.[3]  In Solomon v. Flipps Media, Inc., the plaintiff, like

Simon here, alleged that the defendant's website transmitted her Facebook ID and the titles and

URLs of the videos she viewed on the defendant's website to Facebook through the Pixel.  136

F.4th 41, 43 (2d Cir. 2025).  The Court, in affirming the dismissal of the plaintiff's claim,

determined that "personally identifiable information" under the VPPA "encompasses

information that would allow an ordinary person to identify a consumer's video-watching habits,

but not information that only a sophisticated technology company could use to do so."  Id. at 52.

Thus, the plaintiff's claim could only survive a motion to dismiss if "the Complaint plausibly

allege[d] that [the defendant]'s disclosure of [the plaintiff]'s [Facebook ID] and video titles

'would, with little or no extra effort, permit an ordinary recipient to identify [the plaintiff's]

video-watching habits.'"  Id. at 54 (quoting In re Nickelodeon Consumer Privacy Litigation, 827

F.3d 262, 284 (3d Cir. 2016)).  Analyzing a screenshot of the code transmitted by the Pixel, the

Court found that it was "implausible that an ordinary person would look at the [code]" and

understand it to contain a video's title or the viewer's Facebook ID.  Id.

            Subsequently, the Second Circuit considered another Pixel-related VPPA claim

and, relying on the reasoning of Solomon, affirmed the district court's dismissal of the plaintiff's

complaint.  Hughes v. Nat'l Football League, 24-2656, 2025 WL 1720295, at *3 (2d Cir. June

20, 2025) (summary order).  In doing so, the Court clarified that Solomon "focused on whether

an ordinary person would be able to understand the actual underlying code communication itself,

regardless of how the code is later manipulated or used by Facebook."  Id.  And, dispelling any

---

[3] The Second Circuit decided Solomon v. Flipps Media, Inc., 136 F.4th 41 (2d Cir. 2025), on May 1, 2025.  On May 8, 2025, HGTV submitted its reply memorandum of law in support of its motion to dismiss, which cited Solomon. (ECF 34.)  On June 20, 2025, the Second Circuit issued its summary order in Hughes v. Nat'l Football League, 24-2656, 2025 WL 1720295 (2d Cir. June 20, 2025).  HGTV then submitted a letter notice of supplemental authority drawing the Court's attention to Hughes on June 26, 2025.  (ECF 35.)  Simon has not responded to HGTV's notice of supplemental authority or otherwise addressed Solomon or Hughes.

doubt, the Court proclaimed that "*Solomon* effectively shut the door for Pixel-based VPPA claims."  Id. at \*2.

Following Solomon and Hughes, courts in this district have uniformly concluded that those decisions preclude claims like the one alleged by Simon here.  See Salazar v. Nat'l Basketball Ass'n, 22-cv-07935 (JLR), 2025 WL 2830939, at \*5 (S.D.N.Y. Oct. 6, 2025) ("Because an ordinary person would not plausibly be able to identify Plaintiff's video-watching habits as a result of the Pixel transmissions, Plaintiff has not plausibly alleged that the NBA disclosed personally identifiable information in violation of the VPPA."); Joiner v. NHL Enters., Inc., 23-cv-2083 (LAK), 2025 WL 3126106, at \*1–2 (S.D.N.Y. Sept. 29, 2025) (dismissing Pixel-based VPPA claim after adopting in part report and recommendation that relied on Solomon); Taino v. Bow Tie Cinemas, LLC, 23-cv-5371 (VSB), 2025 WL 2652730, at \*8 (S.D.N.Y. Sept. 16, 2025) (Solomon was "fatal" to "Plaintiff's allegations . . . that Defendant sent Plaintiff's Facebook ID and the name of the movie they were purchasing tickets for . . . to Facebook" (internal quotation marks omitted)); Golden v. NBCUniversal Media, LLC, 22-cv-9858 (PAE), 2025 WL 2530689, at \*7 (S.D.N.Y. Sept. 3, 2025) ("[D]isclosures comprehensible only to Facebook or other sophisticated actors are not PII.  That forecloses [the plaintiff]'s claim." (citations omitted) (citing Hughes, 2025 WL 1720295, at \*2–3; Solomon, 136 F.4th at 54–55)); Nixon v. Pond5, Inc., 24-cv-05823 (JLR), 2025 WL 2030303, at \*5 (S.D.N.Y. July 21, 2025) (granting motion to dismiss because "the Second Circuit has now twice rejected" plaintiffs' theory that their Facebook IDs "can be identified from the c_user cookie and can thus be used to identify their individual video-watching habits" (citing Solomon, 136 F.4th at 54; Hughes, 2025 WL 1720295, at \*3)).

The Court concludes that Simon's claim must be dismissed.  Like the plaintiff in Solomon, Simon presents several screenshots showing code that is purportedly transmitted by the Pixel to Facebook.  (Compl't ¶¶ 18–22, 24–25, 27.)  But outside of conclusory statements, Simon's Complaint does not contain any allegations describing how an ordinary person "with little or no extra effort" would be able to discern that the Pixel transmission contained Simon's Facebook ID, browser identifier or the titles of the videos viewed by her.  Solomon, 136 F.4th at 54.  As in Solomon, the code transmitted by the hgtv.com Pixel is not clearly labeled such that an ordinary person could identify the personal information conveyed by that code.  See id.  Nor does the Complaint allege how an ordinary person would access that code or connect the information it contains to Simon's identity.[4]  See id.  The Complaint alleges that Facebook "processes" the code received from the Pixel, without elaborating on what such processing entails.  (Compl't ¶ 12.)  The Complaint supplies no allegations supporting an inference that an ordinary person could "process" the information from the Pixel.  Indeed, Simon acknowledges in her opposition brief that the Pixel transmits "complex computer code that could not be reasonably discovered by the ordinary consumer."  (ECF 32 at 7.)  These characteristics of the information transmitted by the Pixel doom Simon's claim.  See Golden, 2025 WL 2530689, at *7 ("[D]isclosures comprehensible only to Facebook or other sophisticated actors are not PII.").

Simon's allegations that her email address was collected and disclosed by the Automatic Advanced Matching functionality of the Pixel fare no better.  As the Complaint explains, information collected by the Automatic Advanced Matching feature is "hashed," i.e., it is a "computed summary of digital data" that "cannot be reversed back into the original data."

---

[4] Simon's argument that a Facebook ID identifies a particular person because anyone can use a Facebook ID to locate a Facebook user's profile on Facebook's website (see Compl't ¶ 33) was rejected by the Second Circuit in Solomon.  136 F.4th at 54–55.

(Compl't ¶ 35.)  There are no allegations in the Complaint that support an inference that an ordinary person "with little or no extra effort" could identify and somehow convert this hashed data back into an understandable format and connect that information to Simon, let alone that an ordinary person could access that data in the first place.  Solomon, 136 F.4th at 54.

Because the Complaint does not plausibly allege that an ordinary person could identify the information transmitted by the Pixel or link that information to Simon, it does not plausibly allege that Simon's personally identifiable information was disclosed to Facebook by the Pixel on HGTV's website.  Simon's claim will therefore be dismissed.

### III.  Simon's Request for Leave to Amend Is Denied.

In the concluding sentence of her opposition brief, Simon urges that "[s]hould the Court grant Defendant's Motion in any part, Plaintiffs respectfully request leave to amend . . . ." (ECF 32 at 22.)  Simon provides no suggestion as to how she would amend the pleading of her VPPA claim.  On this basis alone, the request will be denied.  See Cinema Village Cinemart, Inc. v. Regal Entertainment Group, 15-cv-05488 (RJS), 2016 WL 5719790, at *7 (S.D.N.Y. Sept. 29, 2016) (Sullivan, J.), aff'd, 708 F. App'x 29 (2d Cir. 2017) ("The Second Circuit has consistently held that district courts may deny leave to amend when a plaintiff requests such leave in a cursory sentence on the last page of an opposition to a motion to dismiss, without offering any justification or attaching a proposed amended pleading.").

Further, HGTV supplied Simon with a four-page single-spaced letter outlining the basis for its proposed motion to dismiss, including substantially the same argument that ultimately succeeded.  (ECF 17.)  Simon responded seeking leave to amend.  (ECF 18.)  The Court granted the request and the Second Amended Complaint was filed.  (ECF 20 & 22.) HGTV filed a second letter addressed to the new pleading laying out once again the basis for the motion.  (ECF 23.)  Thereafter, at the initial conference, the Court offered Simon the opportunity

to further amend, but Simon indicated that she did not wish to do so.  (Order of Feb. 24, 2025, ECF 28.)  Having passed up the opportunity to further amend, the Court declines to grant leave at this juncture.

Finally, in light of the Second Circuit's <u>Solomon</u> decision and its assertion in <u>Hughes</u> that it had "effectively shut the door" to this type of claim, the Court concludes that amendment of the Complaint would be futile.  <u>See</u> <u>Hughes</u>, 2025 WL 1720295, at *2–3 (declining to remand to allow the plaintiff to amend the complaint because amendment "would likely be futile" given the holding in <u>Solomon</u>).  When, as here, amendment would be futile because "it appears that plaintiff cannot address the deficiencies identified by the court and allege facts sufficient to support the claim," denial of leave to amend is proper.  <u>Panther Partners Inc. v. Ikanos Commc'ns, Inc.</u>, 347 F. App'x 617, 622 (2d Cir. 2009).

CONCLUSION.

HGTV's motion to dismiss is GRANTED with prejudice.  Simon's request for leave to amend is DENIED.  The Clerk is respectfully directed to terminate the motion (ECF 29), enter judgment for the defendant, and close the case.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
        November 13, 2025

- 16 -